SA–AG, INC., Respondent,

v.

**MINNESOTA DEPARTMENT OF TRANSPORTATION, et al.,**
Defendants,

State of Minnesota, Appellant.

**DONOVAN CONTRACTING OF ST. CLOUD, INC., et al., Respondents,**

v.

**MINNESOTA DEPARTMENT OF TRANSPORTATION, et al.,**
Defendants,

State of Minnesota, Appellant.

No. CX–89–972.

Court of Appeals of Minnesota.

Oct. 17, 1989.

Wood R. Foster, Jr., Siegel, Brill, Greupner & Duffy, Minneapolis, for Sa–Ag, Inc.

Hubert H. Humphrey, III, Atty. Gen., Steven M. Gunn, Asst. Atty. Gen., St. Paul, for State of Minn.

Michael H. Daub, Minneapolis, for Donovan Contracting of St. Cloud, Inc., et al.

Stephen D. Gordon, Gordon, Miller & O'Brien, Minneapolis, for intervenor Teamsters Local 221.

Heard, considered and decided by NORTON, P.J., and LANSING and IRVINE *, JJ.

## OPINION

NORTON, Judge.

On November 30, 1988, the Minnesota Department of Transportation issued a statement, entitled General Addendum A (the addendum), to all bidders on state contracts. The addendum purported to explain which haulers of sand, gravel or stone to state highway construction projects would have to adhere to prevailing wage and hourly rates. Claiming that this addendum was an interpretation of Minn.Stat. § 177.44, subd. 2 (1988), respondents asserted the addendum constituted a rule, the adoption of which is subject to the rulemaking procedures set forth in the Minnesota Administrative Procedure Act (MAPA), Minn.Stat. ch. 14 (1988). Respondents sought an order from the trial court enjoining any state department from enforcing the provisions of the addendum. Determin-

* Acting as judge of the Court of Appeals by ap-    pointment pursuant to Minn. Const. art. VI, § 2

ing that the addendum was a statement of general applicability and future effect, the trial court concluded the addendum was a rule and enjoined the state from enforcing its provisions unless and until it is adopted as a rule after notice and a hearing pursuant to MAPA. Appeal was taken from the order issuing the injunction. We affirm.

## FACTS

Respondents Sa–Ag, Inc. (Sa–Ag), Donovan Contracting of St. Cloud, Inc. (Donovan), and L & D Trucking, Women Business Enterprise, Inc. (L & D), all are in the business of delivering mineral aggregate, such as sand, gravel and stone, to state construction sites. Respondents either use their own employee drivers or subcontract with trucking firms or independent truckers to deliver the mineral aggregate. According to affidavits filed by officers of all three corporations, they have bid in the past on state contracts and have never been required to pay their employees or the persons with whom they subcontract the prevailing wage rate set forth in Minn.Stat. § 177.44 (1988).

On November 30, 1988, the Minnesota Department of Transportation issued a statement, entitled General Addendum A, to all persons bidding on state highway projects. The addendum supplemented the list of requirements for bidders for state contracts and read as follows:

> The Department of Transportation will administer this Contract in accordance with the provisions set forth in Minnesota Statutes, Section 177.44. Subdivision 2, Applicability, of this section of the Statute states:
>
>> "This section does not apply to wage rates and hours of employment of laborers and mechanics engaged in the processing or manufacture of materials or products, or to the delivery of materials or products by or for commercial establishments which have a fixed place of business from which they regularly supply the processed or manufactured materials or products. This section applies to laborers or mechanics who deliver mineral aggregate

such as sand, gravel, or stone which is incorporated into the work under the contract by depositing the material substantially in place, directly or through spreaders, from the transporting vehicle."

The State Department of Labor and Industry has interpreted this to mean, where materials such as sand, gravel or stone are deposited on the roadway, from the hauling vehicle, such materials are then substantially in place as contemplated by the Statute. Accordingly, truck drivers employed on this project by contractors, sub-contractors and independent trucking companies shall be covered by the prevailing wage requirements of the Statute and this Contract. *Independent truck owner-operators hauling materials for this project shall be similarly covered by the attached minimum truck rental rate requirements of the Statute and this Contract.*

(Emphasis in original.)

The first sentence of Minn.Stat. § 177.44, subd. 2, is known as the exception to the requirement that contractors adhere to prevailing wage and hour requirements. The second sentence is known as the exception to the exception. Respondents and other persons similarly situated had been treated as coming within the exception to the rule prior to issuance of the addendum. After issuance of the addendum, however, respondents came within the exception to the exception. This is because, according to the addendum, the State Department of Labor and Industry interpreted the statutory term "substantially in place" to mean materials that were deposited on the roadway from the hauling vehicle. Because respondents, or their subcontractors, do deposit sand, gravel and stone directly upon the roadway, they now come within the exception to the exception.

On May 4, 1989, Sa–Ag petitioned the trial court to temporarily enjoin the Commissioners of the Departments of Transportation, Labor and Industry, and Administration (hereinafter appellants) from enforcement of the provisions of the addendum. On May 5, 1989, Donovan and L & D

also commenced a similar action requesting declaratory judgment and injunctive relief. Although these actions were not formally consolidated by the trial court, all parties treated the matter as one action and the trial court issued identical orders.

Respondents argued that the addendum, purporting to interpret Minn.Stat. § 177.44, subd. 2, was an "agency statement of general applicability and future effect, * * * adopted to implement or make specific the law enforced or administered by it." Therefore, respondents argued the addendum constituted a "rule," pursuant to Minn.Stat. § 14.02, subd. 4 (1988), and could be of no effect unless properly adopted according to the procedures set forth in MAPA. To properly adopt a rule, the agency must publish the proposed rule, submit a statement of need and reasonableness and, in certain circumstances, hold a hearing before an administrative law judge. *See* Minn.Stat. §§ 14.08, 14.131, 14.-14, 14.15 (1988).

In support of their argument that the addendum was a rule, respondents introduced a memorandum, dated July 30, 1986, from Paul Bergman, Department of Transportation Contract Administration Engineer, to Don Jackman, Director of the Labor Standards and Prevailing Wage Division of the Department of Labor. Bergman was responding to a complaint from truck drivers employed by a trucking company who were not paid the prevailing wage rates as required by statute. Bergman explained that the companies employing these drivers came within the exception to the statutory requirement because the materials they deposited on the construction sites from their dumptrucks were *not* substantially in place. Bergman explained that the materials were not substantially in place because they would have to be further spread by bulldozers or blades and finally compacted by rollers.

The trial court granted respondents' motion and temporarily enjoined appellants from enforcement of the addendum in the letting of contracts for road construction. The temporary injunction remains in effect until one of the departments completes a rulemaking process and properly promulgates a rule. The Commissioners of the state departments appealed from the order for temporary injunction and also petitioned this court for a writ of prohibition. This court declined to issue a writ of prohibition but agreed to hear the appeal on an expedited basis.

## ISSUE

Did the trial court err in enjoining appellants from enforcing the provisions of a statement regarding compliance with prevailing wage and hourly rates in the letting of state highway construction projects?

## ANALYSIS

The trial court must balance the five following factors in determining if a temporary injunction is appropriate.

(1) The nature and background of the relationship between the parties preexisting the dispute giving rise to the request for relief.

(2) The harm to be suffered by plaintiff if the temporary restraint is denied as compared to that inflicted on defendant if the injunction issues pending trial.

(3) The likelihood that one party or the other will prevail on the merits when the fact situation is viewed in light of established precedents fixing the limits of equitable relief.

(4) The aspects of the fact situation, if any, which permit or require consideration of public policy expressed in the statutes, State and Federal.

(5) The administrative burdens involved in judicial supervision and enforcement of the temporary decree.

*Dahlberg Brothers, Inc. v. Ford Motor Co.,* 272 Minn. 264, 274–75, 137 N.W.2d 314, 321–22 (1965). The decision whether or not to grant the injunction is within the trial court's discretion. *Independent School District No. 35 v. Engelstad,* 274 Minn. 366, 370, 144 N.W.2d 245, 248 (1966). This court should view the facts alleged in the pleadings and the affidavit as favorably as possible to the party who prevailed before the trial court. *Cramond v. Ameri-*

can *Federation of Labor and Congress of Industrial Organizations*, 267 Minn. 229, 234–35, 126 N.W.2d 252, 257 (1964). Although the granting of a temporary injunction requires consideration of five factors, the parties agree that the deciding factor is the likelihood of prevailing on the merits, i.e., whether or not the addendum constitutes a rule, which is a purely legal question.

Minn.Stat. § 14.02, subd. 4, defines "rule" as:

> Every agency statement of general applicability and future effect, including amendments, suspensions, and repeals of rules, adopted to implement or make specific the law enforced or administered by it or to govern its organization or procedure. * * *

There is no dispute the addendum is in fact a statement by an agency of general applicability and future effect. The sole dispute is over whether this statement by the agency is merely a statement of clear statutory law, or interpretation of a statute which can have more than one meaning. If, as the appellants claim, the addendum is simply an "announcement" of the statutory requirement, then it is not a rule. *See Wacha v. Kandiyohi County Welfare Board*, 308 Minn. 418, 420–21, 242 N.W.2d 837, 839 (1976). If the addendum goes beyond announcing the statutory requirements, and actually includes an interpretation of the statute, then it is in fact a rule, and subject to the rulemaking process in Chapter 14. *Cf. id.*

The parties agree that, if anything, the addendum would be an interpretive rule, which is one "promulgated to make specific the law enforced or administered by the agency." *St. Otto's Home v. Minnesota Department of Human Services*, 437 N.W.2d 35, 42 (Minn.1989) (citing *Minnesota–Dakotas Retail Hardware Association v. State*, 279 N.W.2d 360, 364 (Minn.1979)). The issue, therefore, is whether the addendum makes more specific the law as set forth in Minn.Stat. § 177.44, subd. 2.

The statute states that prevailing wage and hourly rates must be complied with where delivery is made "by depositing the material substantially in place, directly or through spreaders, from the transporting vehicle." *Id.* The addendum states that when materials such as sand, gravel or stone are deposited *on the roadway*, from the hauling vehicle, such materials are then substantially in place as contemplated by the statute.

Respondents argue the addendum is a rule because it more specifically defines the term "substantially in place." Specifically, they point out the addendum states that all materials deposited on a roadway are considered to be "substantially in place," regardless of what else is done to those materials after they are so deposited. Respondents refer to the memorandum from Bergman to Jackman in which Bergman explains why certain materials were *not* substantially in place because they still needed to be spread quite a bit after being deposited on the roadway. Respondents thus claim this memo indicates that the term "substantially in place" is in fact susceptible of more than one meaning.

Appellants argue that "substantially in place," as set forth in the statute, is plain on its face and requires no interpretation; therefore, they claim the addendum cannot be an interpretation of the already plain statutory language. We disagree. First of all, the Department of Transportation had in fact interpreted the term "substantially in place" differently in the past. Therefore, as respondents claim, "substantially in place" appears to be subject to more than one interpretation. In addition, respondents submitted affidavits describing the process of dumping and spreading various aggregates on roadways. Evidence indicated that in many cases, about $1/10$ of the total labor is taken up in transporting the materials and actually dumping them onto the roadway; the remaining $9/10$ of the labor involves spreading the material onto the roadway after the hauler has entirely left the site. Thus, it appears that in many cases the process of spreading the aggregates across the roadway, i.e. putting the material substantially in place where it will remain, is a process

separate and distinct from delivery and depositing of the materials.

Appellants also claim the term "substantially" is plain on its face and admits of no further interpretation. *See Cable Communications Board v. Nor-West Cable Communications Partnership*, 356 N.W.2d 658, 667–68 (Minn.1984) (meaning of "substantially contested" was plain on its face). Even if the term "substantially" is deemed incapable of interpretation, the more important question in this case concerns the meaning of "in place." As respondents point out, the statute does not define whether "in place" refers to when the material is sitting in a pile immediately after being deposited on the roadway, or when it is smoothed out upon the roadway and ready for further grading or compacting. We note that Section 2211.3 of the Minnesota State Highway Specifications employs the terms "placing" and "placed" in the context of depositing mineral aggregate upon roadways:

> The material for each layer shall be spread and compacted to the required cross-section and density before *placing* aggregate thereon for a succeeding layer. The surface of each layer shall be maintained with uniform texture and firmly keyed particles until the next layer required by the contract is *placed* thereon or until the completed base is accepted if no other construction is required thereon.

*Id.* (emphasis added). This provision lends further support to respondents' position that "in place" means after additional labor has been performed to smooth out the aggregate to a uniform depth.

In any event, the statutory term, "substantially in place," is certainly subject to more than one interpretation and the Department of Transportation thus engaged in rulemaking by issuing the addendum which interprets the term. Consequently, the trial court properly enjoined enforcement of the terms of the addendum unless and until the appropriate state agency adopts a rule pursuant to the Minnesota Administrative Procedure Act.

## DECISION

The trial court correctly determined the addendum was a rule and thus did not err in enjoining enforcement of the addendum's provisions until it is properly adopted as a rule.

Affirmed.