DONOVAN CONTRACTING OF ST. CLOUD, INC., Respondent,

L & D Trucking Woman Business Enterprise, Inc., Respondent,

v.

MINNESOTA DEPT. OF TRANSPORTATION, et al., Appellant.

No. CX-90-2498.

Court of Appeals of Minnesota.

May 14, 1991.

Review Denied Aug. 2, 1991.

Michael H. Daub, Minneapolis, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Scott R. Strand, Gilbert S. Buffington, Asst. Attys. Gen., St. Paul, for appellant.

Considered and decided by
AMUNDSON, P.J., and HUSPENI and
RANDALL, JJ.

## OPINION

HUSPENI, Judge.

Appellant challenges the trial court's award of attorney fees and expenses under the Minnesota Equal Access to Justice Act (MEAJA). Minn.Stat. §§ 3.761–.765 (1990). We affirm.

## FACTS

The facts addressing the merits of the temporary injunction phase of this litigation are thoroughly summarized in *SA–AG, Inc. v. Minnesota Dep't of Transp.*, 447 N.W.2d 1, 2–3 (Minn.App.1989). Briefly, respondent contractors challenged the state's unilateral promulgation of General Addendum A that purported to interpret the Minnesota Prevailing Wage Statute. The trial court enjoined enforcement of the addendum provision if and until the state engaged in formal rule-making. This court affirmed. *Id.*

Following the affirmance, the contractors moved for attorney fees and expenses pursuant to the MEAJA. In August 1990, the trial court granted the motion, awarding $18,290 in attorney fees and $1,242.46 in costs. In the memorandum attached to the order, the trial court explained:

Significantly, [respondents] in previous dealings, were exempted from compliance by MN DOT's [Minnesota Department of Transportation's] then interpretation of Minn.Stat. § 177.44, subd. 2 * * *

[Respondents] have established that they fit within the statutorily enumerated categories which entitle them to the relief they request. [Respondents] have further argued that [appellants] were not substantially justified in their position. [Appellants] have countered * * *: 1) that a reasonable basis existed in truth for the facts alleged; 2) that a reasonable basis existed in law for the legal theory propounded, and; 3) that the facts and law give rise to substantially justi-

fied position. Here, there was no legal basis for [appellants'] position since [appellants] materially changed a rule contrary to the Minnesota Administrative Procedures Act, Minn.Stat. § 14.01 *et. seq. See SA–AG Inc. v. Minnesota Department of Transportation*, 447 N.W.2d 1 (Minn.App.1989). That action was unreasonable and unjustified.

State agencies must act lawfully and within their legislatively mandated powers before state statutes and regulations can be construed to lawfully encroach upon the proprietary interests of third parties. Accordingly, the Court finds that [appellants] were not substantially justified in defending the "amended" interpretation of Minn.Stat. § 177.44 subd. 2 and shall award, pursuant to Minn.Stat. § 3.762(a), fees and other expenses incurred in the above litigation.

Appellant challenges the trial court's award.

## ISSUE

Did the trial court err by awarding attorney fees and expenses under the Minnesota Equal Access to Justice Act?

## ANALYSIS

■ Minnesota courts have not yet decided the appropriate standard of review for awards of attorney fees under the MEAJA. The legislature enacted the MEAJA in 1986, modeling the act on the federal Equal Access to Justice Act (EAJA) 28 U.S.C. § 2412 (1988). *See In re Haymes*, 444 N.W.2d 257, 258 (Minn.1989). Ordinarily, in interpreting a state statute modeled on a federal enactment, federal cases that interpret the federal statute are instructive. *See Anderson v. Commissioner of Taxation*, 253 Minn. 528, 540, 93 N.W.2d 523, 532 (1958).

In *Pierce v. Underwood*, 487 U.S. 552, 560–61, 108 S.Ct. 2541, 2547–48, 101 L.Ed.2d 490 (1988), the United States Supreme Court held that an abuse of discretion standard of review should be applied to EAJA appeals. The court reasoned in part:

We think that the question whether the Government's litigating position has been "substantially justified" is precisely [the] multifarious and novel question, little susceptible, for the time being at least, of useful generalization, and likely to profit from the experience that an abuse-of-discretion rule will permit to develop. *Id.* at 562, 108 S.Ct. at 2548. The *Pierce* court concluded that deferential treatment of the trial court's decision would "implement [the court's] view that a 'request for attorney's fees should not result in a second major litigation.'" *Id.* at 563, 108 S.Ct. at 2549 (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983)). The Wisconsin Supreme Court, faced with this precise issue, followed *Pierce* and applied the abuse of discretion standard to appeals under Wisconsin's version of the EAJA. *Sheely v. Wisconsin Dep't of Health & Social Serv.,* 150 Wis.2d 320, 442 N.W.2d 1, 9 (1989). We find *Pierce* and *Sheely* persuasive and accordingly hold that an abuse of discretion standard is appropriate in reviewing MEAJA cases.

■ Appellant first contends that the trial court erred by giving the MEAJA an expansive interpretation and by implicitly ruling that this court's affirmance of the temporary injunction is dispositive in the fees phase of the litigation.

The MEAJA provides in relevant part:

If a prevailing party[1] other than the state, in a civil action * * *, brought by or against the state, shows that the position of the state was not substantially justified, the court * * * shall award fees and other expenses to the party unless special circumstances make an award unjust.

Minn.Stat. § 3.762(a). The act defines "substantially justified" to mean that

the state's position had a reasonable basis· in law and fact, based on the totality

of the circumstances before and during the litigation or contested case proceeding.

Minn.Stat. § 3.761, subd. 8. As the MEAJA is a limited waiver of sovereign immunity, courts should strictly construe its language. *See Ruckelshaus v. Sierra Club,* 463 U.S. 680, 685, 103 S.Ct. 3274, 3278, 77 L.Ed.2d 938 (1983) (interpreting the EAJA).

While Minnesota courts have not yet interpreted the term "substantially justified," the United States Supreme Court has interpreted the words under the EAJA to mean "'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person" rather than "justified to a high degree." *Pierce,* 487 U.S. at 565, 108 S.Ct. at 2550. "Substantially justified," however, "means * * * more than merely undeserving of sanctions for frivolousness." *Id.* at 566, 108 S.Ct. at 2550.

The MEAJA places the burden of proof on the party seeking fees, while the EAJA imposes upon the government the burden of proving that its actions were substantially justified. *Compare* Minn.Stat. § 3.762(a) *with* 28 U.S.C. § 2412(d)(1)(B). In enacting the EAJA, Congress rejected essentially automatic fee awards to prevailing parties, fearing that the awards "might have a chilling effect on reasonable government enforcement efforts." *Houston Agr. Credit Corp. v. United States,* 736 F.2d 233, 236 (5th Cir.1984) (citation omitted).

■ Appellant argues that the mere fact that respondents prevailed on the merits is an insufficient basis upon which to determine that the state's position was not substantially justified. We agree. Minn.R. 1400.8401, subp. 3(A)(2)(c) (1989) specifically provides:

No presumption arises that the agency's position was not substantially justified

---

1. The parties do not appear to dispute that respondents were the prevailing parties in the merits phase of this litigation. However, even if the parties had disputed the issue, Minn.R. 1400.8401, subp. 3(A)(2)(a) (1989) resolves the matter:

the applicant need not have succeeded on every issue raised but must have at least been successful on the central issue or received substantially the relief requested

in order to receive an award of fees. Here, respondents obtained an injunction that was affirmed on appeal. *SA–AG,* 447 N.W.2d at 5.

simply because the agency did not prevail.

*See Gava v. United States,* 699 F.2d 1367, 1371 (Fed.Cir.1983) (fact that government lost case does not establish that its position was not substantially justified). Thus, although the court's decision in *SA–AG·* is instructive, it is not dispositive. Rather, this court must examine the basis for the arguments raised by the state "based on the totality of the circumstances before and during the litigation." Minn.Stat. § 3.761, subd. 8.

■ In examining the basis for arguments raised by the state, we must address Minnesota's prevailing wage law.[2] Minn. Stat. §§ 177.41–.44 (1988). The portion of the wage statute applicable to highway construction contracts provides:

> A laborer * * * employed by a contractor, subcontractor, agent, or other person doing or contracting to do all or part of the work under a contract * * * to which the state is a party, for the construction or maintenance of a highway, * * * must be paid at least the prevailing wage rate in the same or most similar trade or occupation in the area.

Minn.Stat. § 177.44, subd. 1. The statute further provides:

> **Applicability.** This section does not apply to wage rates and hours of employment of laborers * * * engaged in the processing or manufacture of materials or products, or to the delivery of materials or products by or for commercial establishments which have a fixed place of business from which they regularly supply the processed or manufactured materials or products. This section applies to laborers * * * who deliver mineral aggregate such as sand, gravel, or stone which is incorporated into the work under the contract by depositing the material *substantially in place,* directly or through spreaders, from the transporting vehicle.

Minn.Stat. § 177.44, subd. 2 (emphasis added). Appellant argues that the *interpretation* of the term "substantially in place" promulgated in Addendum A was justified. The operative language of the addendum states:

> The State Department of Labor and Industry has interpreted [the language of Minn.Stat. § 177.44, subd. 2] to mean, where materials such as sand, gravel or stone are deposited on the roadway from the hauling vehicle, such materials are then substantially in place as contemplated by the Statute.

Although each of the arguments in support of appellant's interpretation may have merit in and of itself, these arguments do not go to the truly central issue in the case. The issue is not whether the state could interpret the statute as it did,[3] but rather whether the government's unilateral promulgation of the addendum itself violated the Administrative Procedure Act, thus rendering the state's position unjustified. Minn.Stat. §§ 14.01–.69 (1988). We, therefore, examine reasons given by the state for promulgating Addendum A without first engaging in formal rule-making procedures.

Under the Administrative Procedure Act, a "rule" is defined as

> every agency statement of general applicability and future effect, including amendments, suspensions, and repeals of rules, adopted to implement or make specific the law enforced or administered by it or to govern its organization or procedure.

Minn.Stat. § 14.02, subd. 4. "Rules" are divided into three categories: interpretative, legislative and procedural. *McKee v. Likins,* 261 N.W.2d 566, 577 (Minn.1977). "Interpretative rules" are "promulgated to make specific the law enforced or administered by the agency." *Minnesota–Dakotas Retail Hardware Ass'n v. State,* 279 N.W.2d 360, 364 (Minn.1979) (footnote omit-

---

**2.** Minnesota's prevailing wage statute is modeled on the Davis–Bacon Act, 40 U.S.C. §§ 276a to 276a–5 (1964), the provision that governs the payment of wages on federally-funded public works projects.

**3.** The two conflicting administrative interpretations extant before promulgation of Addendum A amply demonstrate the need for a single, clear interpretation.

ted). "[F]ailure to comply with necessary [rule-making] procedures results in invalidity of the rule." *White Bear Lake Care Center, Inc. v. Minnesota Dep't of Pub. Welfare,* 319 N.W.2d 7, 9 (Minn.1982).

Here, the state adopted and distributed Addendum A with the expectation that all bidders for highway projects pay prevailing wage rates to truck drivers delivering aggregate to the construction site. Appellant contends that the state was justified in promulgating Addendum A before engaging in formal rule-making for three reasons.

Appellant first argues that the interpretation of the term "substantially in place" is consistent with the plain meaning of the statute. We cannot agree. This court in *SA–AG* observed in part that the department of transportation and department of labor and industry had conflicting interpretations of the statute. *Id.,* 447 N.W.2d at 2–4. Furthermore, the process of delivering the aggregate only accounts for approximately 1/10 of the total labor expended in setting the aggregate "substantially in place." *Id.*

Moreover, we find that the state was aware that the statute was susceptible of more than one meaning. The addendum interpreting [4] the statute was not merely "intended to implement existing law" as in *Wacha v. Kandiyohi County Welfare Bd.,* 308 Minn. 418, 421, 242 N.W.2d 837, 839 (1976),[5] but rather was an interpretative rule that has "the force and effect of law." *Id.* Therefore, the addendum is subject to the rule-making requirements of the Administrative Procedure Act. *Id.* Appellant even appears to concede in its amended memorandum in opposition to the motion for temporary injunction dated February 12, 1990, that the term "substantially in place" had two interpretations:

> [P]rior to the publication of [Addendum A] that contained the State definition, MN DOT and MDLI [Minnesota Department of Labor and Industry] had disagreed over what placing mineral aggregate "substantially in place" meant, although MN DOT accepted MDLI's interpretation as its own when it published "General Addendum No. 'A'."

Second, to justify the state's promulgation of Addendum A without first engaging in formal rule-making, appellant argues that the contractor's reliance on MN DOT's previous practice did not estop the state from enforcing the statute. *See Brown v. Minnesota Dep't of Pub. Welfare,* 368 N.W.2d 906, 910–12 (Minn.1985); *see also* Minn.Stat. § 645.41 (1990) ("A law shall not be deemed repealed by the failure to use such law"). Appellant's argument is misplaced. As we have stated, Addendum A went beyond enforcing the mere terms of the statute; on its face, it purported to interpret the statutory language. Interpretative rules *must* be adopted by following the procedures set forth in the Administrative Procedure Act. *St. Otto's Home v. Minnesota Dep't of Human Serv.,* 437 N.W.2d 35, 42 (Minn.1989). Thus, resolving the two interpretations by publishing Addendum A without first engaging in rule-making was not a justified action for the state to take.

Third, appellant argues that had the state failed to send out an advisory such as Addendum A, the state would have faced potential litigation from the truck drivers to enforce the statute. It reasons that the MN DOT interpretation was no less of a "rule" than Addendum A. Accordingly, it concludes that the truck drivers may have been successful, using the unpromulgated rule argument, in obtaining an injunction prohibiting the enforcement of the MN DOT interpretation (i.e. that the dump-truck driver was not entitled to the prevailing wage). We find this argument weak in view of the period that the MN DOT interpretation was in force. Moreover, either interpretation should have been promul-

---

**4.** The addendum states in part: "The State Department of Labor and Industry has *interpreted* [Minn.Stat. § 177.44, subd. 2] to mean * * *." (Emphasis added.)

**5.** In *Wacha,* the supreme court held that the public welfare bulletin, announcing that tax refunds to welfare recipients constituted income, merely restated a pre-existing decision of the supreme court. *Id.* 308 Minn. at 421, 242 N.W.2d at 839.

gated properly by using the procedures set forth in the Administrative Procedure Act.

We conclude that the position of the state in the underlying action here would not be viewed by the reasonable person as having a reasonable basis in fact or law. Viewing the totality of the circumstances, we are convinced that the trial court did not abuse its discretion by finding that the state's position was not "substantially justified."

Finally, respondents urge this court to exclude from consideration "Decision and Order dated August 24, 1990 of the U.S. Department of Labor Administrative Law Judge in the matter of disputes concerning the payment of prevailing wage rates and overtime by Ames Construction, Inc., et al." submitted in appellant's appendix. Respondents argue that the ALJ's opinion was not before the trial court and therefore is not properly part of the record on appeal. *See* Minn.R.Civ.App.P. 110.01. We find respondents' argument unpersuasive as we may properly take judicial notice of the case pursuant to Minn.Stat. § 599.04 (1990) ("Every court of this state shall take judicial notice of the common law and statutes of every state, territory, and other jurisdiction of the United States"). Having decided to deny respondents' motion to strike, we note nevertheless that the case did not influence the decision in this matter.

### DECISION

The trial court properly awarded attorney fees and expenses after concluding that the government's position in imposing a rule that was not adopted in accordance with the Administrative Procedure Act was not substantially justified.

Affirmed.