STATE of Minnesota, by Hubert H. HUMPHREY, III, its Attorney General, Petitioner, Respondent,

v.

BAILLON COMPANY, et al., Appellants.

No. C2–93–47.

Court of Appeals of Minnesota.

July 20, 1993.

800

Hubert H. Humphrey, III, Atty. Gen., John C. Jeppson, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Eric J. Magnuson, Stephan K. Warch, Minneapolis, for appellants.

Considered and decided by SCHUMACHER, P.J., and FORSBERG and PETERSON, JJ.

## OPINION

PETERSON, Judge.

In May 1983, as part of a highway development project, respondent State of Minnesota used the "quick take" provision of the eminent domain statute, Minn.Stat. § 117.042 (1982), to acquire title to real estate owned by appellant Baillon Company. The taking deprived Baillon's remaining land of direct highway access. The state offered Baillon $1300 for the taking. In March 1985, the condemnation commissioners awarded Baillon $2530 for the lost land and $302,400 for lost highway access. Both parties appealed to district court and a jury awarded Baillon $270,000. In August 1992, Baillon moved for attorney fees under the Minnesota Equal Access to Justice Act. The district court rejected the state's argument that the Act did not apply to eminent domain proceedings but ruled Baillon failed to meet the Act's requirements. We affirm.

## FACTS

In 1974 Baillon purchased undeveloped real estate adjacent to a highway with the intent to develop it. In May 1983, the state, pursuant to its construction plans for Interstate Highway 94, acquired title to part of Baillon's property under the "quick take" provisions of the eminent domain statute. Minn.Stat. § 117.042 (1982). As a result of the construction of I-94, the remaining portion of Baillon's property lost direct access to the highway. The state's appraiser estimated the value of the condemned land to be $1300 with no allowance for lost highway access.

In March 1985, condemnation commissioners awarded Baillon $2530 for the condemned land and an additional $302,400 for lost highway access. Both parties appealed the award to district court. At trial, two expert witnesses testified for the state; one estimated Baillon's damages at $1300 and the other at $96,000. Baillon's two experts alleged damages were $506,150 and $680,000. The jury awarded Baillon a total of $270,000, but did not apportion the amount between land loss damages and damages for lost highway access.

Baillon later moved for attorney fees under Minn.Stat. § 549.21 (1992), alleging the state's litigation was in bad faith. Baillon also requested attorney fees under the Minnesota Equal Access to Justice Act (MEAJA or Act) which allows a business to recover attorney fees from the state if the business prevails in litigation against the state and shows that the state's position was not "substantially justified." Minn. Stat. § 3.761–.765 (1992). After a September 1992 hearing, the district court ruled the state's litigation was not in bad faith and denied Baillon's request for attorney fees under Minn.Stat. § 549.21. The district court also concluded that even though a condemnation proceeding is a "special proceeding," it is also a "civil action" to which the MEAJA applies. The district court then ruled that Baillon failed to show the state's position was not "substantially justified" under the Act and denied Baillon's motion for attorney fees. Baillon challenges the district court's denial of attorney fees under the MEAJA and the state alleges the MEAJA does not apply to condemnation proceedings.

## ISSUES

1. Does the Minnesota Equal Access to Justice Act apply to condemnation proceedings?

2. Is Baillon a "prevailing party" under the Act?

## ANALYSIS

Minn.Stat. § 3.762(a) (1992) provides:

If a prevailing party other than the state, in a civil action or contested case proceeding other than a tort action, brought by or against the state, shows that the position of the state was not substantially justified, the court or administrative law judge shall award fees and other expenses to the party unless special circumstances make an award unjust.

## I.

 Whether the MEAJA applies to eminent domain proceedings is a question of statutory construction subject to de novo review on appeal. *Sorenson v. St. Paul Ramsey Medical Ctr.*, 457 N.W.2d 188, 190 (Minn.1990). Because "the MEAJA is a limited waiver of sovereign immunity, courts should strictly construe its language." *Donovan Contracting v. Minnesota Dep't of Transp.*, 469 N.W.2d 718, 719 (Minn.App.1991), *pet for rev. denied* (Minn. Aug. 2, 1991).

### A. *Chapter 117*

 The state argues Baillon cannot recover attorney fees under the MEAJA because the attorney fee provisions of chapter 117 are the exclusive method of recovering attorney fees in eminent domain proceedings. The statutory provisions cited by the state, however, do not indicate they are the exclusive method of recovering attorney fees in eminent domain proceedings. *See* Minn.Stat. §§ 117.045; 117.105, subd. 2; 117.195, subd. 2 (1992). Also, while the cases cited by the state indicate recovery of attorney fees in eminent domain proceedings is "strictly statutory," they do not state that the only statutes that may be invoked to recover attorney fees in eminent

domain proceedings are those in chapter 117. *See County of Freeborn v. Bryson*, 294 N.W.2d 851, 852 (Minn.1980); *City of Minnetonka v. Carlson*, 265 N.W.2d 205, 207 (Minn.1978); *State by Spannaus v. Carter*, 300 Minn. 495, 497, 221 N.W.2d 106, 107 (1974); *In re Minneapolis Community Dev. Agency*, 447 N.W.2d 891, 894 (Minn.App.1989), *pet. for rev. denied* (Minn. Jan. 12, 1990); Finally, the MEAJA was not enacted until 1986; 1986 Minn. Laws ch. 377, §§ 1–7, and *Minneapolis Community Dev. Agency*, the only case cited by the state that does not predate the MEAJA, does not mention the Act. The state has not demonstrated the attorney fee provisions of chapter 117 are the exclusive method to recover attorney fees in eminent domain proceedings.

### B. *MEAJA*

 The state also alleges the MEAJA is inapplicable to eminent domain proceedings because eminent domain proceedings are "special proceedings" rather than the "civil actions" or "contested case proceedings" to which the Act explicitly applies.

In *Antl v. State*, 220 Minn. 129, 19 N.W.2d 77 (1945), the supreme court stated: "Condemnatory proceedings in the exercise of the right of eminent domain are not civil actions or causes within the meaning of the constitution, but special proceedings, only *quasi* judicial in their nature." *Id.* at 133, 19 N.W.2d at 79 (quoting *State ex rel. Simpson v. Rapp*, 39 Minn. 65, 67, 38 N.W. 926, 928 (1888)).[1] Even if we assume that eminent domain proceedings are "special proceedings," it is not necessary to conclude that they may not be treated as civil actions.

In *Schiltz v. City of Duluth*, 449 N.W.2d 439, 440–41 (Minn.1990), the supreme court

---

1. To the extent the state argues the MEAJA is inapplicable because, under *Antl*, 220 Minn. at 133, 19 N.W.2d at 79–80, eminent domain proceedings, including just compensation determinations, are inherently legislative, we note, but do not address *Antl*'s apparent conflict with the "ancient principle" that "[determining] the measure of just compensation for a taking of private property 'is a judicial, and not a legislative question.'" *United States v. Sioux Nation of Indians,*

448 U.S. 371, 417 n. 30, 100 S.Ct. 2716, 2742 n. 30, 65 L.Ed.2d 844 (1980) (quoting *Monongahela Navigation Co. v. United States*, 148 U.S. 312, 327, 13 S.Ct. 622, 626, 37 L.Ed. 463 (1893)); *see State v. Weber–Connelly, Naegele, Inc.*, 448 N.W.2d 380, 383 (Minn.App.1989) ("[i]t is for the judiciary to ascertain the measure of just compensation") (citing *Monongahela Navigation Co.*, 148 U.S. at 327, 13 S.Ct. at 626).

considered whether a motion for a new trial is authorized and appealable in a mandamus action as in a civil action. The court acknowledged that mandamus proceedings are "special proceedings," but did not conclude that this categorization, by itself, resolved the issue. Instead, the court examined provisions of the mandamus statute and considered the nature of a mandamus proceeding. *Id.*

Specifically, the court observed:

Minn.Stat. § 586.08 (1988) states that, in a mandamus action, "[pleadings] shall be construed and amended, and the issues tried, and further proceedings had, in the same manner as in a civil action." Similarly, Minn.Stat. § 586.09 (1988) provides for an appeal from the district court to the court of appeals "as in other civil cases."

*Id.* at 440 (alteration in original).

The court then held that

since the legislature has indicated its intention that these matters are to proceed as other civil cases, a motion for a new trial in mandamus proceedings is authorized and appealable pursuant to Minn. R.Civ.App.P. 103.03(d). * * * We acknowledge by our holding today that while not all "special proceedings" carry with them the indicia of a trial, mandamus proceedings are so similar, both in practice and in principle, that it is reasonable for the aggrieved party to seek the same post-decisional relief.

*Id.* at 441.

Thus, under *Schiltz*, the fact that a proceeding is a "special proceeding" does not preclude treating it as a civil action. The critical question is the degree to which the special proceeding carries the "indicia of a trial."

An appeal from an award of the commissioners

may be noticed for *trial* and *tried* except as herein otherwise provided *as in the case of a civil action* * * *. The owners shall go forward with the evidence and have the burden of proof *as in any other civil action* * * *. The court or jury *trying the case* shall reassess the damages de novo.

Minn.Stat. § 117.175, subd. 1 (1992) (emphasis added). The emphasized text indicates that the legislature intended that an appeal from the commissioners' award in an eminent domain proceeding be conducted in a manner similar to a trial in a civil action.

 An appeal from an award of the commissioners has the "indicia of a trial." The nature of the proceeding is sufficiently similar "in practice and in principle" to civil proceedings to apply the civil rules under *Schiltz*. *See State by Lord v. Pearson*, 260 Minn. 477, 482, 110 N.W.2d 206, 210 (1961) (under predecessor eminent domain provisions, appeal of a commissioners' award was conducted under the rules of civil procedure). Under the rules, the action functionally becomes a civil action. *See* Minn.R.Civ.P. 2 ("[t]here shall be one form of action to be known as 'civil action' ").[2] One of the incidents of a civil action in which the state is a party is the right to seek attorney fees under the MEAJA. Minn.Stat. § 3.762(a). The MEAJA applies to an appeal from an award of the commissioners.[3]

**2.** The state argues Minn.R.Civ.P. 81.01(a) and Appendix A to the civil rules exclude eminent domain proceedings from being covered by the rules. Under rule 81.01(a), however, the proceedings listed in Appendix A are exempted from the civil rules only to the extent the proceedings are "inconsistent or in conflict with the rules." Therefore, while chapter 117 is listed in Appendix A, because Minn.Stat. § 117.175, subd. 1 contemplates a civil trial, the proceedings governed by Minn.Stat. § 117.175 do not conflict with the rules.

**3.** Neither the original quick take proceeding nor the commissioner's proceeding producing the original damage award which may be appealed to district court have sufficient "indicia of a trial" to be treated as a "civil action" under *Schiltz*. *See* Minn.Stat. § 117.042 (1992) (property owner has no opportunity to challenge condemning authority's "appraisal of value" in quick take proceeding); § 117.085 (1992) (commissioner's proceeding is more inquisitorial than adversarial). *See generally State by Mattson v. Goins*, 286 Minn. 54, 57, 174 N.W.2d 231, 233 (1970) (under predecessor statute, "*after* the filing of an appeal in district court from the commissioner's report in an eminent domain proceeding, it *becomes* a judicial proceeding and

## II.

■ Whether Baillon was a "prevailing party" under the MEAJA was argued to the district court. The district court, however, did not address the issue because it was unnecessary to do so after concluding Baillon's failure to show that the state's position was not "substantially justified" precluded Baillon from recovering attorney fees. Because the remedy provided by the MEAJA is only available to a prevailing party in a civil action, we will address the issue whether Baillon was a prevailing party.

What constitutes a "prevailing party" under the MEAJA in the eminent domain context has not been previously addressed. The MEAJA does not define "prevailing party." The MEAJA was based on the Federal Equal Access to Justice Act, 28 U.S.C.A. § 2412 (West Supp.1992) (FEAJA). *Donovan,* 469 N.W.2d at 719. "Ordinarily in interpreting a state statute modeled on a federal enactment, federal cases that interpret the federal statute are instructive." *Id.* The state concedes the FEAJA is applicable to federal eminent domain proceedings, but alleges federal authority is distinguishable because of different language in the FEAJA.

Baillon cites cases from federal circuit courts defining the term "prevailing party" under the FEAJA. *See, e.g., United States v. 341.45 Acres of Land,* 751 F.2d 924, 938 (8th Cir.1984) ("prevailing party" includes "property owners who simply recover more than the government offers as just compensation in condemnation cases") *vacated,* 786 F.2d 1168 (8th Cir.1986); *United States v. 101.80 Acres of Land,* 716 F.2d 714, 723 (9th Cir.1983) (condemnee who "secures a just compensation award substantially greater than the original deposit" is "prevailing party"). Apparently because the circuits had divergent views on what constituted a "prevailing party" in the eminent

domain context, Congress amended the FEAJA in 1985 to define a "prevailing party" in eminent domain cases as

> a party who obtains a final judgment * * * exclusive of interest, the amount of which is at least as close to the highest valuation of the property involved that is attested to at trial on behalf of the property owner as it is to the highest valuation of the property involved that is attested to at trial on behalf of the Government.

28 U.S.C.A. § 2412(d)(2)(H) (West Supp. 1992). Because the federal case law definitions of "prevailing party" cited by Baillon predate this amendment, to the extent those definitions are inconsistent with the statutory definition, they were rejected by Congress.

■ Where a Minnesota statute is modeled on a federal statute, we cannot say it is appropriate to define a critical term using definitions rejected in the federal context prior to the state enactment. We, therefore, conclude the case law definitions of "prevailing party" cited by Baillon are inapplicable here. Also, although we note that Baillon does not meet the FEAJA's definition of "prevailing party" because the state's highest valuation ($96,000) was closer to the jury award ($270,000) than Baillon's highest valuation ($680,000), we do not adopt the federal statutory definition of "prevailing party" for eminent domain purposes because it is the prerogative of the legislature to define the terms critical to its enactments.

We simply conclude that because the jury in the district court proceeding reduced the commissioner's award by over $30,000, Baillon is not a prevailing party.[4] Under this analysis, we need not address whether the state's position was "substantially justified" under the Act.

---

the rules of civil procedure apply") (emphasis added).

**4.** We note, but because it was not argued by the parties we do not address, the possibility that because each party appealed to the district

court, Baillon could be deemed a partial prevailing party in that its defense against the state's attempt to reduce the commissioner's award was partially successful. *See Benson Coop. Creamery Ass'n v. First Dist. Ass'n,* 276 Minn. 520, 531, 152 N.W.2d 182, 182–83 (1967).

## DECISION

The Minnesota Equal Access to Justice Act applies to an appeal from an award of the commissioners in an eminent domain proceeding, but Baillon is not a "prevailing party" under the Act.

**Affirmed.**