*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

## STATE OF MINNESOTA
## IN COURT OF APPEALS
## A14-1585

Minnesota Voters Alliance, et al.,
petitioners,
Appellants,

vs.

State of Minnesota, et al.,
Respondents

**Filed May 26, 2015**
**Affirmed**
**Worke, Judge**

Ramsey County District Court
File No. 62-CV-13-7718

Erick G. Kaardal, Mohrman, Kaardal & Erickson, P.A., Minneapolis, Minnesota (for appellants)

Lori Swanson, Attorney General, Alethea M. Huyser, Assistant Attorney General, Nathan J. Hartshorn, Assistant Attorney General, St. Paul, Minnesota (for respondents)

Considered and decided by Hudson, Presiding Judge; Worke, Judge; and Smith, Judge.

### U N P U B L I S H E D   O P I N I O N

**WORKE**, Judge

Appellants challenge the district court's denial of their request for attorney fees under the Minnesota Equal Access to Justice Act (MEAJA), Minn. Stat. §§ 15.471-.474 (2014), after successfully obtaining a writ of quo warranto requiring respondents to

discontinue online voter registration, arguing that the district court erred by concluding that respondents were substantially justified in creating an online-voter-registration system. We affirm.

## FACTS

In September 2013, respondent secretary of state introduced online voter registration, allowing citizens of Minnesota to submit voter-registration applications online.

On November 4, 2013, appellants Minnesota Voters Alliance, Minnesota Majority, and Minnesota House of Representatives Steve Drazkowski, Ernie Leidiger, Mary Franson, and Jim Newberger petitioned the district court for a writ of quo warranto requiring respondents State of Minnesota and the secretary of state, in his official capacity, or his successor[1], to show by what grant of authority the secretary of state created the online-voter-registration system. Appellants showed that taxpayer funds were spent to develop and maintain the online-voter-registration system, which they claimed was a misappropriation of public funds for an unauthorized action.

Respondents countered that the secretary of state has the authority and discretion to permit Minnesota voters to submit their voter-registration applications by electronic means. Respondents also challenged appellants' standing to seek quo warranto relief.

---

[1] Secretary of State Mark Ritchie introduced the online-voter-registration system. His successor, Steve Simon, moved for substitution of his name for former Secretary Ritchie's as a respondent on appeal.

On April 28, 2014, the district court granted appellants' petition for issuance of a writ of quo warranto.[2] The district court concluded that appellants had standing as taxpayers because they challenged respondents' unauthorized use of public funds. The district court then considered whether any provision in Minnesota voter-registration law prevented the extension of the Uniform Electronic Transactions Act (UETA), Minn. Stat. §§ 325L.01-.19 (2014), its purpose being to promote governmental transactions by authorizing the use of electronic records and signatures, to authorize the creation of the online-voter-registration system. The court found three requirements for a valid Minnesota voter-registration application: (1) it must use a proper form, (2) the form must be signed, and (3) the form must be delivered in the right way. *See* Minn. Stat. §§ 201.061, subd. 1, .071, subds. 1, 3, 203B.16, .17 (2012). The parties did not dispute that an acceptable form could be placed online, and the court concluded that the UETA authorized electronic signatures on online voter registrations. The district court concluded, however, that delivery was limited to "in person or by mail." *See* Minn. Stat. § 201.061, subd. 1.

Respondents argued that under the UETA, the secretary of state and the voters could agree to change the mail-delivery option to permit electronic delivery. Respondents relied on a provision in the UETA that "a requirement under a law . . . to send . . . a record by . . . mail may be varied by agreement to the extent *permitted by the other law*." Minn. Stat. § 325L.08(d)(2) (emphasis added). The district court found that

---

[2] On April 29, 2014, the Minnesota Legislature passed a bill requiring the secretary of state to maintain online voter registration. The governor signed the bill into law, effective April 30, 2014. *See* Minn. Stat. § 201.061, subd. 1(2) (2014).

respondents failed to identify any law permitting the parties to deviate from the delivery requirements. The district court concluded that neither the UETA nor Minnesota election law authorized the secretary of state to accept electronically delivered applications through an online-voter-registration system.

Appellants[3] moved for attorney fees and costs, arguing that although attorney fees are generally unavailable against the state, an exception exists under the MEAJA. Appellants argued that they were entitled to attorney fees because respondents' action, though plausible, was unreasonable. Respondents argued that there was no difference between an act being "plausible" and "having a reasonable basis." Respondents argued that the secretary of state had a reasonable basis for his action because he understood that under the UETA, the mail-delivery requirement could be varied by agreement to the extent permitted by other law; because no law expressly prohibited the act, the secretary of state believed that the requirement could be varied.

The district court denied appellants' motion, concluding that appellants failed to show that the state's position was not substantially justified. The court stated that the secretary of state "mistakenly concluded that . . . complex and interrelated laws gave him express authority to establish an online voter registration tool . . . . The mere fact that the secretary of state misinterpreted the law does not automatically render his analysis unreasonable." The district court concluded: "[Appellants'] attempt to split hairs with the

---

[3] Only the Minnesota Voters Alliance and the Minnesota Majority sought recovery of attorney fees and costs because only a "party" may recover attorney fees and costs, and under the MEAJA, "party" is defined to exclude individuals. Minn. Stat. § 15.471, subd. 6; *see McMains v. Comm'r of Pub. Safety*, 409 N.W.2d 911, 914 (Minn. App. 1987).

terms 'plausible' and 'reasonable' is inconsistent with the definitions of the words. By conceding that the [s]ecretary of [s]tate's interpretation was 'plausible,' [appellants] must also be viewed as admitting that the [s]ecretary of [s]tate's positon was 'reasonable.'" This appeal followed.

**D E C I S I O N**

*Standing*

Initially, respondents challenge appellants' standing. "Standing is the requirement that a party has a sufficient stake in a justiciable controversy to seek relief from a court." *State by Humphrey v. Philip Morris Inc.*, 551 N.W.2d 490, 493 (Minn. 1996). "Standing is acquired when a party has suffered some 'injury-in-fact' or when a party is the beneficiary of some legislative enactment granting standing." *Citizens for a Balanced City v. Plymouth Congregational Church*, 672 N.W.2d 13, 18 (Minn. App. 2003) (emphasis omitted). Standing is a jurisdictional issue reviewed de novo. *In re Custody of D.T.R.*, 796 N.W.2d 509, 512 (Minn. 2011).

Respondents argue that quo warranto petitions cannot be brought on the basis of taxpayer standing because appellants cannot show any special interest different from that of the general public. Generally, absent statutory authority, taxpayer standing does not exist unless the taxpayer can show some individual injury that is special and different from injury sustained by the general public. *Conant v. Robins, Kaplan, Miller & Ciresi, L.L.P.*, 603 N.W.2d 143, 146 (Minn. App. 1999), *review denied* (Minn. Mar. 14, 2000). But taxpayers without a personal or direct injury may still have standing to maintain an action that restrains the "unlawful disbursements of public moneys . . . [or] illegal action

5

on the part of public officials." *McKee v. Likins*, 261 N.W.2d 566, 571 (Minn. 1977) (quotation omitted).

Appellants challenged the online-voter-registration system, which was an ongoing pursuit that appellants believed the secretary of state went beyond his power to create. *See State ex rel. Sviggum v. Hanson*, 732 N.W.2d 312, 320 (Minn. App. 2007) (stating that the quo warranto remedy may be applied to ongoing exercise of power). Respondents conceded that taxpayer funds were used to create, maintain, and operate the online-voter-registration system. Appellants thus had standing to petition for the writ.

## *Attorney fees*

We review the district court's denial of a request for attorney fees and costs under the MEAJA for an abuse of discretion. *Donovan Contracting of St. Cloud, Inc. v. Minn. Dep't of Transp.*, 469 N.W.2d 718, 720 (Minn. App. 1991), *review denied* (Minn. Aug. 2, 1991). A district court abuses its discretion when it exercises it "in an arbitrary or capricious manner, or base[s] its ruling on an erroneous view of the law." *State, Campaign Fin. & Pub. Disclosure Bd. v. Minn. Democratic-Farmer-Labor Party*, 671 N.W.2d 894, 899 (Minn. App. 2003).

The district court concluded that appellants were not entitled to attorney fees because they failed to demonstrate that the state's position was not substantially justified. Under the MEAJA, a prevailing party may be awarded attorney fees if it shows that the state's position was not "substantially justified." Minn. Stat. § 15.472(a). "'Substantially justified' means that the state's position had a reasonable basis in law and fact, based on the totality of the circumstances before and during the litigation or

6

contested case proceeding." Minn. Stat. § 15.471, subd. 8. We must determine whether the district court erroneously viewed the meaning of "substantially justified" in denying appellants' request for attorney fees. *See State, Campaign Fin. & Pub. Disclosure Bd.*, 671 N.W.2d at 899 (stating that a district court abuses its discretion when it bases its ruling on an erroneous view of the law).

Citing to caselaw, the district court stated that "substantially justified" means "justified to a degree that could satisfy a reasonable person." *See Pierce v. Underwood*, 487 U.S. 552, 565, 108 S. Ct. 2541, 2550 (1988). Because appellants conceded that the secretary of state's position was "plausible but not reasonable," the district court compared dictionary definitions of the words "plausible" and "reasonable," and concluded that appellants' "attempt to split hairs with the terms 'plausible' and 'reasonable' [was] inconsistent with the definitions of the words[,]" and that "[b]y conceding that the [s]ecretary of [s]tate's interpretation was 'plausible,' [appellants] . . . also . . . admitt[ed] that the [s]ecretary of [s]tate's position was 'reasonable.'" Appellants challenge the district court's finding that plausibility is reasonable, asserting that there is a difference between what is plausible and what is reasonable.

### *Dictionary definition*

Appellants first object to the district court's reliance on dictionary definitions. The district court looked to the Oxford Dictionary and stated that a "plausible" argument is "reasonable or probable." Relying on the same source, the court concluded that "reasonable" and "plausible" are synonyms. Appellants cite to the Merriam-Webster Dictionary, which also defines "plausible" as "reasonable." The American Heritage

7

College Dictionary defines plausible as "[s]eemingly or apparently valid, likely, or acceptable; credible." *The Am. Heritage College Dictionary* 1048 (3d ed. 2000). But appellants point out that "plausible" can alternatively mean "to deceive." *See id.* (providing alterative definition for "plausible" as "[g]iving a deceptive impression of truth").

Appellants claim that the district court should not have relied on dictionary definitions because of the alternative meaning and because, while dictionaries are useful, they lack context. But the district court did have context in which to apply the definitions. The district court was within the confines of section 15.471, subdivision 8: "'Substantially justified' means that the state's position had a *reasonable* basis in law and fact." Minn. Stat. § 15.471, subd. 8 (emphasis added). Because appellants conceded that the secretary of state's interpretation of the law was "plausible," the district court compared the words "plausible" and "reasonable" and determined that they were synonymous. The district court did not erroneously view the law by analyzing dictionary definitions and applying them to the statute.

### *Comparison by analogy*

Appellants also attempt to show that not all plausible arguments are reasonable by way of analogy to other areas of law—matters explaining differential diagnosis, insurance-policy interpretations, and tribal-gaming statutes. But the district court never stated that *all* plausible arguments are reasonable. Although appellants claim that the district court's interpretation failed to view the words in the appropriate context, raising analogous situations takes the issue out of context.

8

For example, in appellants' analogy to a differential diagnosis, they quote to a case, stating: "In performing a differential diagnosis, a physician begins by 'ruling in' all scientifically plausible causes of the [patient's] injury. The physician then 'rules out' the least plausible causes of injury until the most likely cause remains." *McDonough v. Allina Health Sys.*, 685 N.W.2d 688, 695 n.3 (Minn. App. 2004) (quotation omitted). Appellants take from that quotation: "Hence, it is recognized that not all plausible acts, causes, or actions, are the same here, 'most likely.' Similarly, not all plausible arguments are reasonable in the context of the MEAJA's statutory definition of 'reasonable basis.'" But being "most likely" and being "reasonable" are not identical concepts. Additionally, in the context of a differential diagnosis, ruling out the "least plausible causes of injury" does not mean that initially ruling them in was unreasonable. Finally, the statute does not require that the state action be the "most likely" course; it must be "substantially justified," having "a reasonable basis in law and fact." Minn. Stat. § 15.471, subd. 8. Appellants' challenge to the district court's conclusion by way of analogy is unpersuasive.

### *Statutory definition*

Appellants also argue that the district court should have looked no further than the MEAJA, which defines "substantially justified" as having "a reasonable basis in law and fact," not a "plausible basis." *Id.*

The statutory definition has been interpreted and explained in caselaw. In *Donovan*, the state and the Minnesota Department of Transportation challenged the award of attorney fees to contractors under the MEAJA. 469 N.W.2d at 719. The

9

contractors had successfully challenged enforcement of an addendum that purported to interpret the existing wage statute until the state engaged in formal rule-making. *Id.* In determining whether the state's action was substantially justified, the court examined the reasons given by the state for promulgating the addendum without first engaging in formal rule-making procedures. *Id.* at 721. The court concluded that the "position of the state in the underlying action . . . would not be viewed by the reasonable person as having a reasonable basis in fact or law" and was, therefore, not substantially justified. *Id.* at 723.

In determining whether the district court abused its discretion in concluding that appellants failed to show that the secretary of state's action was not "substantially justified," we must review the underlying litigation position and determine if the secretary of state's creation of the online-voter-registration system could satisfy a "reasonable person" as having a reasonable basis in fact or law. *See id.* (evaluating the state's position under the totality of the circumstances to determine whether the act was justified to a degree that could satisfy a reasonable person); *see also Pierce*, 487 U.S. at 569, 108 S. Ct. at 2552 (reviewing the "actual merits" of the government's position).

### *Underlying decision*

Appellants assert that the district court's conclusion that the secretary of state's action was substantially justified contradicts the district court's conclusion in the underlying decision that the secretary of state lacked authority to create an online-voter-registration system. Respondents assert that the secretary's positon was not merely

10

substantially justified, but correct.[4] Respondents argued that under the UETA the secretary of state was permitted to modify registration delivery methods. *See* Minn. Stat. § 201.061, subd. 1. The UETA allows parties to a transaction to agree to conduct their transactions by electronic means. Minn. Stat. § 325L.05. But even if parties agree to conduct their transaction by electronic means, if there is a law requiring a record be sent or transmitted by a specific method, the record must be sent or transmitted by the method specified in the other law. Minn. Stat. § 325L.08 (a), (b). "[A] requirement under a law . . . to send . . . a record by . . . mail may be varied [however] by agreement *to the extent permitted by the other law*." *Id.* (d)(2) (emphasis added).

The district court concluded that no law permitted the delivery-by-mail requirement to be modified. Respondents claim that the UETA is broad and that the district court's interpretation that the mail-delivery requirement cannot be altered without a law that explicitly permits the alteration essentially results in the section having no effect on any law created before the implementation of the UETA. Respondents assert that if the legislature amended all laws with a mail-delivery requirement to permit electronic transmission the UETA would be superfluous. Thus, relevant to our analysis is

---

[4] Respondents suggest, citing to rule 103.04, that we review the correctness of the underlying order. *See* Minn. R. Civ. App. P. 103.04 (stating that on appeal from a judgment, this court may review any order involving the merits or affecting the judgment). But whether the district court should have granted the petition for the writ quo warranto is moot; legislation amended the statute and the secretary of state is now legally required to maintain an online-voter-registration system. *See Kahn v. Griffin*, 701 N.W.2d 815, 821 (Minn. 2005) (stating that an issue is moot if a court is unable to grant effectual relief); *State v. Rud*, 359 N.W.2d 573, 576 (Minn. 1984) (stating that an issue is moot if an event occurs that resolves the issue or renders it impossible to grant effective relief).

11

a determination of whether the secretary of state's interpretation of the UETA to allow alteration of the mail-delivery requirement was reasonable, making the creation of the online-voter-registration system substantially justified.

Respondents assert that an alternative interpretation of "to the extent permitted by the other law" means that a mail-delivery requirement may be altered unless the other law explicitly states that it cannot be altered by the UETA. For example, a law could read: Notwithstanding any other provision of law, the document shall be sent by U.S. mail. The limitation would be created in the other law. This interpretation is not unreasonable; therefore, the secretary of state's creation of the online-voter-registration system based on this interpretation was substantially justified, i.e., satisfying the reasonable person. *See Donovan*, 469 N.W.2d at 723. Because respondents' underlying position was substantially justified, the district court did not abuse its discretion by denying appellants' request for attorney fees and costs.

**Affirmed.**