REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 02386

September Term, 2013

MEDICAL MANAGEMENT AND
REHABILITATION SERVICES, INC., ET AL.

v.

MARYLAND DEPARTMENT OF HEALTH
AND MENTAL HYGIENE

Krauser, C.J.,
Woodward,
Kenney, James A., III
    (Retired, Specially Assigned),

JJ.

Opinion by Kenney, J.

Filed: October 28, 2015

October 26, 2015 Medical Management and Rehabilitation Services, Inc., and its owner, Carolyn Miller (collectively "MMARS"), challenge the Maryland Department of Health and Mental Hygiene's ("the Department's") award of a case management contract to The Coordinating Center ("TCC"). The Circuit Court for Talbot County granted the Department's Motion to Dismiss for Failure to State a Claim. MMARS presents a single question for our review, which we have reworded as follows: Did the circuit court err in granting the motion to dismiss the complaint for failure to exhaust administrative remedies?[1] For the reasons that follow, we shall affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Under Section 15-103(a) of the Health-General Article of the Maryland Code (1982, 2009 Repl. Vol.) ("HGA"), the Secretary of Health and Mental Hygiene is charged with the administration of Maryland's Medicaid program, which provides health care services to qualifying low-income individuals and families throughout Maryland. Medicaid participants with specified rare, expensive, or medically complex conditions[2] can enroll in the Rare and Expensive Case Management ("REM") program, which is a case managed fee-for-service reimbursement system. Approximately 4000 Medicaid participants obtain medical care

---

[1] In its brief, MMARS presents the issue as: "Did the trial court err in granting the Appellee/Defendant[']s Motion to Dismiss for Failure to State a Claim and Dismissing the Appellants[']/Plaintiffs['] complaint for Declaratory Judgment pursuant to [the] State Government Article of the Maryland Code Annotated Code Section 10-125 . . . on the grounds that the Appellants/Plaintiff[]s['] had not exhausted their administrative remedies before filing in the Circuit Court for Declaratory Judgment relief?"

[2] Qualifying conditions are set forth in a "Table of Rare and Expensive Disease" in the Code of Maryland Regulations ("COMAR"). COMAR 10.09.69.17.

through the REM program.

At the inception of the REM program in 1997, the Department contracted for the necessary case management services with several different individual agencies to facilitate the recipients' medical needs. The case managers from the participating agencies would conduct an individual needs assessment, educate the recipient, provide family support, develop treatment plans, coordinate provider services, and monitor the recipient's progress. MMARS was one of the case management agencies selected in 1997 and has continued as a REM program case management provider for fifteen years. When the contract at issue was awarded, MMARS was providing services to over 1000 REM participants.

In 2012, the Department decided to reduce the number of agencies providing REM program case management services from four to one, after both the American Academy of Pediatrics and the Maryland State Medical Society had expressed concern about the REM program's use of multiple case management providers and its effect on efficiency and quality. It was their recommendation that one provider coordinate the case management services.

On December 20, 2012, the Department published a Request for Proposals ("RFP") notifying case management providers of the Department's intent to award the July 1, 2013 through June 30, 2016 contract for case management services to a single provider whose proposal it deemed most advantageous to the State. The RFP also set forth the procedures

for protesting or disputing the RFP or the subsequent contract award,[3] in addition to those procedures already established in 10.01.03 of the Code of Maryland Regulations ("COMAR"). It further stated that any appeals would not stay the starting date of the contested contract.

The prior REM contracts fell under the state procurement regulations, and case management providers were selected through the competitive bid process set forth in COMAR 21.05.03.[4] But, because the Department, in 2009, set the rates for case management

---

[3] Section 1.14 of the Request for Proposals, titled "Protests/Disputes" provided: Any appeal related to this solicitation shall be subject to the provisions of COMAR 10.01.03, [which provides Procedures for Hearings Before the Secretary of Health and Mental Hygiene, including exceptions and judicial review,] except that the Department shall hold a hearing, consider any exceptions and render a final decision within 30 days of the date an appeal is filed. Appeals must be filed with the Contract Monitor within seven (7) calendar days of the date of receipt by the Offeror of a letter of non-award, or if the Offeror requests a debriefing, within seven (7) days of the debriefing. The Department may make an award of this contract notwithstanding an appeal. Appeal by an unsuccessful offeror of an award of this contract does not stay the start date of the contract as agreed to by the Department and the selected awardee.

[4] The competitive procurement process involved "Competitive Sealed Proposals," *see* COMAR 21.05.03, wherein the Department requested bids through Requests for Proposals, which contained information regarding submission requirements, factors relevant to its evaluation of each submission (including their relative importance), and other considerations, such as the price of the offer submitted. *See id.* Bidders responded to these Requests for Proposals by submitting sealed offers. *See id.* The Department, upon completion of all discussions following the submission of offers, awarded contracts to the bidders whose bids it deemed most advantageous to the State. *See id.* The identity of each bidder was withheld until determinations about contract awards were made. *See id.*

services by regulation[5] subsequent contracts for case management services were not procurement contracts governed by its competitive sealed proposal selection procedures.[6]

Five case management providers submitted proposals in response to the December 20, 2012 RFP, none of which objected to the procedures or to the reduction in the number of providers to one. A three-person evaluation committee concluded that TCC best addressed the evaluation factors provided in the RFP by offering a combination of a superior work plan, corporate qualifications, and experience.

After the Department notified MMARS, on April 12, 2013, that it had not received the contract award, MMARS challenged the award of the contract to TCC concurrently in multiple venues, including the Office of Administrative Hearings ("OAH"), the Maryland

---

[5] Starting on July 1, 2009, the rates paid for monthly case management services were determined by regulation:

> E. Effective July 1, 2009, the Department shall pay $406 for case management assessment, as described in Regulation .05C of this chapter.
> F. Effective July 1, 2009, the Department shall make payments monthly for case management services at one of the rates specified below: (1) Level of Care 1: $302; (2) Level of Care 2: $180; or (3) Level of Care 3: $95.

COMAR 10.09.69.14.E-F. COMAR 10.09.69.05C relates to case management assessments performed by REM case managers.

[6] *See* Md. Code (2001, 2009 Repl. Vol.), § 11-101(n)(2)(iii) of the State Finance and Procurement Article ("SFP") ("'Procurement contract' does not include: a Medicaid, Judicare, or similar reimbursement contract for which law sets: 1. user or recipient eligibility; and 2. price payable by the State[.]");  COMAR 21.01.02.01.B.(25)(b) ("'Contract' does not include: . . . (ii) Medicaid, Medicare, Judicare, or similar reimbursement contracts for which user eligibility and cost are set by law or regulation.");  COMAR 21.01.02.01.B.(66-1)("'Procurement contract' does not include: . . . A Medicaid, Judicare, or similar reimbursement contract for which law sets user or recipient eligibility and price payable by the State.").  COMAR 10.09.69.17 sets REM recipient eligibility and COMAR 10.09.69 sets the price payable to REM case management providers.

4

State Board of Contract Appeals ("the Board"), and the Circuit Court for Talbot County.

The Department and OAH

On April 15, 2013, MMARS, via email to the Department, objected to the award of the case management contract to TCC, asserting that its proposal was the most advantageous to the State based on the criteria listed in the RFP. MMARS, on April 25, 2013, supplemented its initial objection, asserting that "[the Department's] evaluations were tainted by bias in favor of [TCC]." Based on its objections, the Department gave MMARS the opportunity to discuss its proposal (although it could not discuss competing proposals) in a debriefing on May 8, in which a procurement officer[7] explained the weaknesses and deficiencies in MMARS's proposal. Following that debriefing, MMARS supplemented its objections with additional complaints.

The Department, on May 6, 2013, delegated its authority to issue a proposed decision regarding MMARS's objections to OAH. *See* COMAR 10.01.03.07. The Administrative Law Judge ("ALJ") conducted hearings on October 2, 3, 4, and 31, and November 1, and issued a proposed decision on December 27, 2013. The ALJ concluded that the Department did not improperly reject MMARS's proposal in response to the RFP and recommended that MMARS's appeal of the contract award be dismissed. MMARS filed exceptions to the ALJ's

---

[7]"Procurement officer[] means any person authorized by a procurement agency in accordance with law or regulations to formulate, enter into, or administer contracts or make written determinations and findings with respect to them. The term also includes an authorized representative acting within the limits of authority." COMAR 21.01.02.01.B.

proposed decision with the Secretary of the Department, but, in March of 2014, it dismissed those exceptions.

## The Board of Contract Appeals

On June 24, 2013, MMARS filed a bid protest with the Board challenging the contract award. The Board, finding that the RFP fell outside the definition of a procurement contract, dismissed the protest for lack of jurisdiction on September 6, 2013. MMARS filed a petition for judicial review of that decision in the Circuit Court for Talbot County on October 1, 2013, but dismissed that petition on April 9, 2014.[8]

## The Declaratory Judgment Action

On September 4, 2013, MMARS filed a Complaint and Motion for Temporary Restraining Order in the Circuit Court for Talbot County. The Department filed a Motion to Dismiss for Failure to State a Claim ("Motion to Dismiss") and Opposition to Plaintiff's Motion for Temporary Restraining Order on September 20. On October 1, 2013, MMARS withdrew its Motion for a Temporary Restraining Order and filed a response to the Department's Motion to Dismiss. MMARS filed an additional response on October 25, 2013. That same day, the circuit court conducted a hearing on the Motion to Dismiss.

On December 23, 2013, the court granted the Motion to Dismiss. The court stated that MMARS had failed to exhaust its available administrative remedies. At the time of the

---

[8]The issue of whether the RFP fell outside the definition of a procurement contract is not before us in this appeal, and we express no opinion on the issue.

court's ruling, the petition for judicial review of the Board's decision was pending before the circuit court, and the exceptions and objections to the Department's contract award were pending before OAH.

## STANDARD OF REVIEW

"[T]he grant of a motion to dismiss [is reviewed] *de novo*." *Reichs Ford Rd. Joint Venture v. State Rds. Comm'n of the State Highway Admin.*, 388 Md. 500, 509 (2005). During that review, we must determine whether the trial court's decision was legally correct. *Napata v. Univ. of Md. Med. Sys. Corp.*, 417 Md. 724, 732 (2011), and "we must assume the truth of the well-pleaded factual allegations of the complaint, including the reasonable inferences that may be drawn from those allegations." *Gasper v. Ruffin Hotel Corp. Of Md.*, 183 Md. App. 211, 226 (2008) (quoting *Adamson v. Corr. Med. Servs., Inc.*, 359 Md. 238, 246 (2000)).

Determining the meaning of a statute, and in this case, the statutory definition of "regulation," is a question of law and subject to *de novo* review. *See Dixon v. Dep't of Pub. Safety & Corr. Servs.*, 175 Md. App. 384, 408 (2007). In that review, we consider the language of the statute in context, not in isolation. *See State Dep't of Assessments & Taxation v. Andrecs*, 444 Md. 585, 588-89 (2015); *see also Bldg. Materials Corp. of Am. v. Bd. of Educ. of Balt. Cnty.*, 428 Md. 572, 585-86 (2012). "Agency decisions premised upon case law, . . . are not entitled to deference." *Gore Enter. Holdings, Inc. v. Comptroller of Treasury*, 437 Md. 492, 505 (2014).

7

**DISCUSSION**

The Trial Court's Failure to Address Expressly MMARS's Regulation Argument

MMARS filed a three count complaint in the circuit court captioned as follows: count one, "Declaratory Judgment Pursuant to State Government Article of the Maryland Annotated Code, Section 10-125 "; count two, "Declaratory Judgment (Pursuant to the Courts and Judicial Proceedings Article of the Maryland Annotated Code, Subtitle Four and State Government Article of the Maryland Annotated Code, Section 10-125[)]"; and count three, "Complaint for Temporary Restraining Order and Preliminary Permanent Injunctive Relief."[9]

The first count, as stated in the pleadings, was an "action for Declaratory Judgment pursuant to the State Government Article of the Maryland Code, Section 10-125, . . . for the purpose of determining questions of actual controversy between the parties and terminating uncertainty and controversy giving rise to [this proceeding.]" According to the complaint, the uncertainty relates to the Department's "attempt to legalize its position[, which] rests on certain regulations [that according to MMARS] are misrepresentations by the [Department,]

_____

[9]In the the third count, MMARS requested "a temporary restraining [o]rder and preliminary injunctive relief pursuant to Maryland Rules 15-501 through 15-505." and alleged that "[the Department's] conduct consist[ed] of a threat to [MMARS's] rights under [its then current] contract with the [Department] and the parties' agreement that the contract [would] continue until the end of the appellant [sic] process[,]" and unless it was restrained from unilaterally cancelling that contract, MMARS would be irreparably harmed. MMARS dismissed count three and withdrew the Motion for a Temporary Restraining Order on October 1, 2013.

[and] as interpreted [by the Department, in addition to] the proposed award of th[e] RFP to TCC, violate portions of the United States and Maryland Constitutions, . . . [and] th[ose] interpretations or provisions exceed the statutory authority of the [Department] as a unit under State Government Article 10-125(d)(2)." The second count, according to MMARS, was "an action for declaratory judgment pursuant to State Government Article of the Maryland Annotated [C]ode, Section 10-125, Sections 3-406 and 3-407 of the Courts and Judicial Proceedings Article of the Annotated Code of Maryland for the purpose of determining a question of actual controversy between the parties." The claim, according to MMARS, related to its then-current contract with the Department.

At a hearing on the Department's Motion to Dismiss, MMARS advanced several arguments: first, as an exception to the exhaustion doctrine, Maryland Code (1984, 2009 Repl. Vol.) § 10-125 of the State Government Article ("SG § 10-125 ") states that an action can be brought in the circuit court without exhausting administrative remedies; second, "by giving [the REM contract] to one company, without any benevolent reason to the people of Maryland [the Department created] a monopoly[;]" and finally that "[t]he RFP is a regulation in itself that created a monopoly in itself because it changed [the REM] program and gave it to one individual contractor when the Department had a few months before stated that all of these contractors had done an exceptional job . . . ."

The circuit court, in granting the Department's Motion to Dismiss, expressly stated

that MMARS had "clearly not exhausted [all] administrative remedies." On appeal, MMARS asserts that the trial court erred, contending that the exhaustion doctrine does not apply because the single provider RFP and the subsequent contract award were, in effect, a regulation and that SG § 10-125 provides "an exception to [the] general rule" that courts "will review only a 'final' decision of an [a]gency."

We ordinarily presume that the circuit court knows the law, and in this case, we can presume its statement regarding MMARS's failure to exhaust administrative remedies was an implicit finding that the exhaustion exception in SG § 10-125 does not apply. But, even if that were not the case, "we may affirm the judgment of a trial court to grant a motion to dismiss on a different ground than that relied upon by the trial court, as long as the alternative ground is before the Court properly on the record." *Forster v. State Office of Pub. Defender*, 426 Md. 565, 580-81 (2012). "[W]here the record in a case adequately demonstrates that the decision of the trial court was correct, although on a ground not relied upon by the trial court and perhaps not even raised by the parties, [we] will affirm." *Robeson v. State*, 285 Md. 498, 502 (1979). "[C]onsiderations of judicial economy justify the policy of upholding a trial court decision which was correct although on a different ground than relied upon." *City of Frederick v. Pickett*, 392 Md. 411, 424 (2006) (quoting *Robeson v. State*, 285 Md. 498, 503 (1979)).

<u>Did the RFP and Contract Award Constitute a Regulation?</u>

10

The Department derives its authority to administer the REM program from statutes that emphasize individualized care and appropriate case management, and that exempt REM participants from mandatory enrollment in standard managed care organizations. *See* Md. Code (1982, 2009 Repl. Vol.), §§15-102.1(b)(1),[10] 15-103(b)(4)(i)[11] of the Health General Article ("HGA"). Supporting regulations set forth REM participant eligibility, COMAR 10.09.69.17; case management reimbursement rates, COMAR 10.09.69.14; and the procedures for contracting for services, *see* COMAR 21.01.

Regulations are to be enacted in accordance with procedures set forth in Title 10 subtitle 1 of the Maryland Administrative Procedure Act ("APA"). Md. Code (1984, 2009 Repl.Vol., 2010 Supp.). In *Balfour Beatty Const. v. Md. Dep't of Gen. Servs.*, 220 Md. App. 334, 356 (2014) we stated:

> [An agency] "may not adopt a proposed regulation" until it has sent a proposed draft to the Attorney General or unit counsel for approval as to legality, and also to the General Assembly's Joint Administrative, Executive, and Legislative Review Committee ("AELR Committee"). Next, the proposed regulation must be

---

[10] "(b) The Department shall, to the extent permitted, subject to the limitations of the State budget:
(1) Provide a comprehensive system of quality health care services with an emphasis on prevention, education, individualized care, and appropriate case management[.]"

[11] "(b)(4)(i) The Secretary may exclude specific populations or services from the program developed under paragraph (1) of this subsection." Subsection (b)(1) reads: "As permitted by federal law or waiver, the Secretary may establish a program under which Program recipients are required to enroll in managed care organizations."

11

> published in the Maryland Register and be accompanied by a notice that: (1) states the economic impact of the proposed regulation on State and local government revenues and expenditures and on groups that may be affected by it, and (2) sets a date, time, and place for public hearing. For the next 30 out of the 45 days during which the regulation is published in the Maryland Register, [the agency] must accept public comment on the proposed regulation.

(Citations omitted).

Arguing that the circuit court erred in dismissing its complaint for failure to exhaust its administrative remedies and that the contract award to TCC created an unconstitutional monopoly, MMARS contends that the single provider RFP "changed the [REM] program" and is effectively a regulation that was not adopted in accordance with Title 10 of the APA. Therefore, MMARS was entitled to petition for a declaratory judgment challenging the Department's award of the contract to TCC because SG § 10-125(a)(1) states "[an individual] may file a petition for a declaratory judgment on the validity of any regulation, whether or not the person has asked the unit to consider the validity of the regulation."

In response, the Department argues that the circuit court properly dismissed the case for failure to exhaust administrative remedies because the RFP and the award of a case management contract pursuant to that RFP fall outside of the APA's definition of a regulation and are not subject to judicial challenge through a petition for a declaratory judgment under SG § 10-125. As evidence that MMARS had failed to exhaust all available

administrative remedies, the Department notes that it filed its petition for declaratory

judgment in the circuit court before the OAH had rendered a decision on its objections and

exceptions, and before the circuit court had acted on MMARS's petition for judicial review

of the Board's decision regarding jurisdiction over the contract award.[12]

The APA defines the term "regulation" as follows:

> "Regulation" means a statement or an amendment or repeal of a statement that: (i) has general application; (ii) has future effect; (iii) is adopted by a unit to: 1. detail or carry out a law that the unit administers; 2. govern organization of the unit; 3. govern the procedure of the unit; or 4. govern practice before the unit; and (iv) is in any form, including: 1. a guideline; 2. a rule; 3. a standard; 4. a statement of interpretation; or 5. a statement of policy.

SG § 10-101(g)(1). The Court of Appeals and this Court have consistently held that an

agency action that does not "formulate new rules of widespread application, change existing

law, or apply [rules] retroactively to the detriment of an entity that had relied on the agency's

past pronouncements . . . [is not a regulation.]" *See, e.g.*, *Balfour*, 220 Md. App. at 357

(citing *Md. Ass'n of Health Maint. Orgs. v. Health Servs. Cost Review Comm'n*, 356 Md.

581, 601 (1999)). Neither appellate court has specifically addressed whether the selection of

a contractor under a RFP can be considered a regulation that is subject to challenge by a

---

[12]In addition, the Department contends that MMARS's petition failed to comply with Maryland Rule 2-303(b), which requires that a pleading be "simple, concise, and direct" and "not include argument, unnecessary recitals of law, evidence, or documents, or any immaterial, impertinent, or scandalous matter." The trial court apparently did not consider that challenge to the petition, and we will not consider it on appeal.

petition for declaratory judgment under SG § 10-125. But, this Court has determined that the introduction of previously unconsidered provisions in a single RFP and that case-by-case agency determinations fall outside of the definition of a regulation. *Balfour*, 220 Md. App. at 357-58.

In *Balfour*, the State issued a RFP for construction services relating to the construction of a new juvenile detention center. *Id.* at 338. Prior to submitting their proposals, several potential bidders filed a joint protest with the Department of General Services ("DGS") challenging the State's inclusion of a Project Labor Agreement ("PLA") as an evaluation factor in the contract selection process. *Id.* at 338-39. The protesting bidders contended that, by including the PLA as a factor to be considered, DGS had created a new procurement policy in violation of state administrative rulemaking provisions. *Id.* at 346. We concluded that the inclusion of the PLA in the RFP was a "pilot project" that "is neither of general application nor future effect." *Id.* at 361. Therefore, its inclusion was not a regulation. *See id.* at 339 ("a novel specification included in a single RFP, without more, does not . . . formulate a new policy of widespread application or future effect and, therefore, does not mandate predicate rulemaking under the Maryland Administrative Procedure Act.").

Moreover, the Court of Appeals has determined that other experimental agency decisions, even long-lasting ones, are not considered regulations. In *Md. Ass'n of Health Maint. Orgs. v. Health Servs. Cost Review Comm'n*, 356 Md. 581 (1999), the Health Services

14

Review Commission ("Review Commission" or "Commission"), seeking a more efficient, less costly method for conducting individual rate reviews of the hospitals under its jurisdiction, implemented an inflation adjustment system ("IAS") into the rate setting process. 356 Md. at 585-86. The IAS method initially was experimental, but within one year of its implementation, the Commission determined that it was more efficient and effective than the previous review mechanism and its implementation was adopted by resolution. *Id.* at 590-91. Twenty-two years after its implementation, the IAS was challenged on the ground that "as a statement, standard and rule of Commission policy, with general application and future effect . . . [it was] indisputably a regulation under the APA." *Id.* at 599-600. The Court of Appeals disagreed, noting that the change in its review methodology, even at its inception, did not "represent a change in the policies or standards applied by the Commission." *Id.* at 602. Rather, it was more analogous to internal policies or methods, as found in the adoption of a Prospective Payment System in *Dep't of Health & Mental Hygiene v. Chimes*, 343 Md. 336 (1996), which implemented a growth cap on the costs factored into the agency's payments to providers, which was not considered a regulation. *See* 356 Md. at 602.

The Court of Appeals has also determined that case-by-case agency actions, even when these actions may have farther reaching implications, are not subject to rulemaking procedures. In *Consumer Prot. Div. Office of Attorney Gen. v. Consumer Publ'g, Co.*, 304 Md. 731 (1985), the Consumer Protection Division of the Office of Attorney General

("Division") filed charges for false and misleading advertising practices against a business that sold mail-order diet pills. *Id.* at 737-38. A final order following an administrative hearing on these charges required that, among other things, the business significantly alter the manner in which it advertised its products. *Id.* at 739-40. Because several businesses marketed similar diet pills in the State, the business challenged the order by arguing that the Division was making industry-wide policy that is subject to rulemaking procedures. *Id.* at 751, 753. The *Consumer Publ'g Co.* Court, citing *SEC v. Chenery Corp.*, 332 U.S. 194, 202–03 (1947), stated that "even if [Consumer Publishing] had proven an industry-wide practice, the Division would not have been required to proceed by rulemaking[,]" because an agency must retain the authority to address problems on a case-by-case basis if the administrative process is to be effective.

In other words, case-by-case determinations will not be considered regulations, so long as an agency action does not apply "materially modified or new standards . . . retroactively to the detriment of [an individual who] relied upon the [agency]'s past pronouncements[.]" *Balt. Gas & Electric v. Pub. Servs. Comm'n*, 305 Md. 145, 169 (1986). It is only when an agency creates a "substantially new generally applicable policy" will it be considered to have promulgated a regulation that is subject to rulemaking procedures. *CBS Inc. v. Comptroller of the Treasury*, 319 Md. 687, 698–99 (1990).

In this case, we are not persuaded that the Department, through the RFP, formulated

16

new rules of widespread application, changed existing law, or applied rules retroactively to MMARS's detriment. To be sure, the competitive bid procedure for procurement contracts that was followed for previous RFPs under the REM program no longer applied. But, that change in the procedure was in accordance with statute and implementing regulations adopted in accordance with the rulemaking provisions of the APA.

Moreover, the single provider RFP, and the subsequent contract award is limited to case management services for a finite segment of the greater Medicaid population for a single contract period of July 1, 2013 through June 30, 2016, and applies only to the case management agencies responding to the RFP. The Department, through the RFP and the contract award, did not impair MMARS's rights under the existing case management contract. And, any claimed detrimental reliance on the Department's previous contract awards to multiple case management would have been unreasonable in light of the clear language of the RFP: "[t]he Department intends to make one award to a single Offeror whose proposal is deemed the most advantageous to the State."

In our view, the RFP does not "formulate a new policy of widespread application or future effect." *See, e.g.*, *Balfour*, 220 Md. App. at 357. That the Department may decide to continue to contract with only one REM case management provider in the future does not make the RFP or the contract award now before us a regulation. *Md. Ass'n of Health Maint. Orgs.*, 356 Md. at 602. A determination about how many providers would best serve the

17

REM population, like the implementation of an Inflation Adjustment System in a hospital rate review, is a matter of methodology of how best to carry out the Department's statutory mandate to provide quality healthcare to the people it serves.

SG § 10-125 provides that "[a] person may file a petition for a declaratory judgment on the validity of any *regulation*." (Emphasis added). But, a court need not issue a declaratory judgement "where there is a lack of jurisdiction or where a declaratory judgment is not an available or appropriate type of remedy." *Christ by Christ v. Md. Dep't of Natural Res.*, 335 Md. 427, 435 (1994). We hold that the Department's RFP and the related contract award do not constitute a regulation under Maryland law. Therefore, MMARS was not entitled to a declaratory judgment under SG § 10-125, but was required to exhaust its administrative remedies.[13] The granting of the motion to dismiss was legally correct.

**JUDGMENT OF THE CIRCUIT COURT FOR TALBOT COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

---

[13]As noted in footnote 3, *see supra* p. 3, Section 1.14 of the RFP provides its available administrative remedies for disputes and protests. It appears appellant initiated that procedure but abandoned it prior to its conclusion.

18