******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

JEFFERSON SOLAR, LLC *v.* DEPARTMENT
OF ENERGY AND ENVIRONMENTAL
PROTECTION ET AL.
(AC 45630)

Bright, C. J., and Cradle and Harper, Js.

*Syllabus*

Pursuant to statute (§ 16-244z (a) (1) (C)), the state Department of Energy
and Environmental Protection (department) is required "to develop pro-
gram requirements and tariff proposals for shared clean energy facilities"
subject to the approval of the state Public Utilities Regulatory Agency
(PURA).

Pursuant further to statute (§ 4-176 (a)), any person may petition an agency
for a declaratory ruling as to the applicability to specified circumstances
of a provision of the General Statutes, a regulation, or a final decision
on a matter within the jurisdiction of the agency.

The plaintiff, a renewable energy developer, brought an action for a declara-
tory judgment pursuant to statute (§ 4-175), seeking to have the Superior
Court issue a ruling as to whether a bid submitted by the defendant F
Co. in response to a 2020 request for proposals for shared clean energy
facilities satisfied a site control program requirement developed by the
defendant department pursuant to § 16-244z (a) (1) (C). I Co., an electric
company, had issued the request for proposals seeking bids for shared
clean energy facility projects in its service territory, and the plaintiff and
F Co. submitted bids to I Co. Bidders were required by the department's
program requirements to show that they had control of the generation
site or an unconditional right to acquire control or an unconditional
option agreement to purchase or lease the site. F Co.'s bid, which
contained an option to lease agreement, was selected by I Co. and was
ultimately approved by PURA. The plaintiff petitioned the Commissioner
of Energy and Environmental Protection to issue a declaratory ruling
stating that the department erred in concluding that F Co.'s bid satisfied
the site control program requirement and that the department's failure
to remove the bid from the rankings was arbitrary and capricious. The
commissioner declined to issue the ruling, stating that the plaintiff failed
to identify any statute, regulation or final decision of the department
to serve as a basis for the declaratory ruling and that the department
lacked the authority to issue such a ruling on the basis of the specified
circumstances laid out in the petition. The plaintiff thereafter initiated
the underlying declaratory judgment action pursuant to the Uniform
Administrative Procedure Act (UAPA) (§ 4-166 et seq.). The department
filed a motion to dismiss, contending that no statute, final decision, or
regulation interfered with the plaintiff's legal rights. The trial court
granted the department's motion, concluding that the department's

review of F Co.'s bid was not a final decision, that the program requirements pursuant to § 16-244z were neither General Statutes nor regulations, and that it could not consider the program requirements pursuant to statute (§ 16-35), which barred appeals from PURA energy procurement processes. On the plaintiff's appeal to this court, *held* that the trial court properly dismissed the plaintiff's action seeking a declaratory judgment under § 4-175, as the plaintiff's requested ruling did not ask the court to determine whether a regulation was valid or to determine the application to specified circumstances of a provision of a regulation, a statute, or a final decision: the legislature did not intend for the department's program requirements pursuant to § 16-244z (a) (1) (C) to be regulations subject to the rule-making process under the UAPA, as the language of that statute did not direct the department to establish regulations as the legislature expressly has done in other sections of the same chapter; moreover, the plaintiff did not have a right to judicial review, as the legislature directed the department to develop the program requirements under § 16-244z for PURA's approval, which implicated § 16-35, and that statute expressly provided that such procedures would be uncontested, and to conclude that the program requirements constituted regulations subject to a declaratory judgment under § 4-175 would render meaningless the express language of both §§ 16-35 (c) and 16-244z (a) (1) (C) exempting the procurement process from judicial review.

Argued October 19, 2023—officially released April 16, 2024

*Procedural History*

Action for, inter alia, a declaratory judgment as to the applicability of a certain provision of the named defendant's shared clean energy program requirements with respect to a certain request for proposals seeking bids for shared clean energy facility projects, and for other relief, brought to the Superior Court in the judicial district of New Britain and transferred to the judicial district of Stamford-Norwalk, Complex Litigation Docket, where the court, *Ozalis, J.*, granted the motion to dismiss filed by the named defendant and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*Thomas Melone*, for the appellant (plaintiff).

*Jill Lacedonia*, assistant attorney general, with whom, on the brief, was *William Tong*, attorney general, for the appellee (named defendant).

*Erick M. Sandler*, with whom, on the brief, were *Johanna S. Lerner* and *Lauren G. Moscato*, for the appellee (defendant FuelCell Energy, Inc., et al.).

*Opinion*

BRIGHT, C. J. The plaintiff, Jefferson Solar, LLC, appeals from the judgment of the Superior Court dismissing its action for a declaratory judgment pursuant to the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq. After the defendant Department of Energy and Environmental Protection (department) declined to issue the plaintiff's requested declaratory ruling pursuant to General Statutes § 4-176 (e), the plaintiff sought a declaratory judgment in the Superior Court pursuant to General Statutes § 4-175 (a). On appeal, the plaintiff claims that the court improperly determined that it lacked subject matter jurisdiction over its declaratory judgment action. We disagree and, accordingly, affirm the judgment.[1]

The trial court set forth the following undisputed facts and procedural history in its memorandum of decision. General Statutes § 16-244z[2] "established, among other things, a new statewide program for shared clean energy facilities ([program]). The . . . program is intended to incentivize the creation of new energy projects through awarding long-term contracts for the purchase of electricity produced by the projects. . . . [Section] 16-244z lays out specific tasks for four entities involved in [shared clean energy facility] procurements:

---

[1] The plaintiff also listed as defendants FuelCell Energy, Inc., and SCEF1 Fuel Cell, LLC (collectively, FuelCell). FuelCell filed an appellate brief with this court asserting several alternative grounds for affirming the judgment. Because we agree with the court's reasoning and affirm the judgment on that basis, we do not consider those alternative grounds.

[2] We note that the legislature amended § 16-244z subsequent to the events at issue. See, e.g., Public Acts 2023, No. 23-102, § 25. Because those amendments are not relevant to this appeal, we refer in this opinion to the current revision of § 16-244z.

The Public Utilities Regulatory Authority (PURA), [the department], and the state's two major electric distribution companies ([electric companies]), The Connecticut Light and Power Company doing business as Eversource Energy (Eversource) and The United Illuminating Company ([United Illuminating]). PURA is the state agency responsible for regulating Connecticut's [electric companies]. . . . Through its energy arm, [the department] is a state agency that has many responsibilities for developing and implementing energy policies and programs. See General Statutes § 22a-2d. Section 16-244z (a) (1) (C) requires [the department] 'to develop program requirements and tariff proposals for shared clean energy facilities . . . .' These requirements are all subject to the review, modification and approval of the PURA. . . .

"Pursuant to that statutory obligation, [the department] prepared new . . . program requirements and submitted them for PURA's review on July 1, 2019. . . . PURA responded to [the department's] filing of the proposed . . . program requirements by initiating an uncontested administrative proceeding for review and approval purposes. Through this proceeding, PURA modified and approved [the department's] proposed . . . program requirements in a final decision issued on December 18, 2019. . . . These program requirements delineate program elements, including the [program's] procurement process, the [program's] structure, the bid evaluation and selection process, project eligibility, and bidder eligibility. . . . The selection of contracts was made pursuant to the bidding process administered by [the department] and the [electric companies]. . . .

"On April 30, 2020, pursuant to [the department's] program requirements, the [electric companies] issued a joint request for proposals ([request]) seeking bids for [shared clean energy facility] projects in their service territories. . . . The program requirements, tariff, and

[the request] required the bidders to demonstrate that they have 'control of the generation site, or an unconditional right, granted by the property owner, to acquire such control.' . . . According to the terms of the [request], an unconditional option to lease agreement was sufficient to satisfy the requisite site control requirement. . . . The program requirements gave [the electric companies] broad discretion and decision-making authority over the evaluation and initial selection of bids submitted in response to the [request]. . . . The program requirements permitted [the department] to audit any selected bidder to ensure compliance with the program. . . . The program requirements also stated that '[the department] shall review and approve the [electric companies'] final selection before the [electric companies] submit them to PURA . . . .' Moreover, pursuant to the program requirements, all selected bids must be approved by PURA. . . .

"At a June 9, 2020, city of Derby Board of [Aldermen/Alderwomen] public meeting, the board approved an option to lease agreement between the city of Derby mayor and FuelCell Energy, Inc., and SCEF1 Fuel Cell, LLC (collectively, FuelCell), for a fuel cell power generating facility on Coon Hollow Road in Derby, Connecticut ([property]). . . . On July 1, 2020, the city of Derby entered into an option to lease agreement with FuelCell for the property. . . .

"In response to [the request], the plaintiff submitted a bid for a 4.0 megawatt solar energy project located in North Branford. . . . FuelCell submitted a bid for a 2.8 megawatt natural gas-powered fuel cell located on the property. . . . The option to lease agreement that FuelCell submitted with its bid was signed by the Mayor of Derby and provided FuelCell with the 'sole and exclusive right, privilege and option to lease [the property] from [Derby], for good and valuable consideration and

upon terms and conditions to be negotiated upon exercise of [the] Option . . . .' The option to lease provides in relevant part: 'Within ninety (90) days after the date of the Notice, the City and [FuelCell] shall enter into a lease agreement upon the terms and conditions set forth in Exhibit B attached hereto and made a part hereof, and such other terms and conditions as the City and [FuelCell] shall negotiate in good faith ([lease]).' . . . Section 4 of Exhibit B to the option to lease provides a specific dollar amount that the annual rent (including the amount of any agreement for payment in lieu of taxes) shall not exceed. . . . [United Illuminating] selected FuelCell's bid as the winning bid for a 2.8 megawatt natural gas-powered fuel cell on the property. . . . Additionally, [United Illuminating] selected a 1.5 megawatt solar project in Milford. . . . [United Illuminating] also selected the plaintiff's bid, but limited the award to a 700 kilowatt facility. . . . On January 22, 2021, PURA approved [United Illuminating's] selections in PURA Docket No. 19-07-01 Ruling to Motion No. 46. . . . On May 13, 2021, the city of Derby Board of [Aldermen/Alderwomen] voted in favor of granting FuelCell the lease in connection with the 2.8 megawatt [shared clean energy facility] project. . . . On August 31, 2021, the city of Derby and FuelCell executed a final lease for the property.

"The plaintiff avers that FuelCell did not satisfy the program requirements' site control provision because it relied on an invalid option to lease. The plaintiff contends that the option to lease had no legal effect because § 22 of the Derby City Charter, which requires a sealed bidding process for any right to use real property, was not complied with as no sealed bidding process took place. The plaintiff also alleges that FuelCell did not have site control of the property because when the city of Derby conveys a property interest, the Derby City Charter does not authorize option leases, it only

authorizes actual leases and outright grants of property interests. The plaintiff further claims that the option to lease did not provide FuelCell with the unconditional right to control because General Statutes § 7-163e was not complied with as there was no public hearing on the proposed option to lease. Moreover, the plaintiff alleges that the option to lease was nothing more than a letter of intent and unenforceable under the statute of frauds because it did not specify a lease price. The plaintiff contends that FuelCell also did not satisfy the site control requirement because the option to lease was conditioned on further approval and the program requirements required bidders to have an unconditional option agreement to purchase or lease the site. Thus, the plaintiff asserts that [the department] was required to not approve [United Illuminating's] selection of Fuel-Cell's bid and [to] remove its bid from the rankings because FuelCell did not meet the site control requirement.

"On February 1, 2021, pursuant to . . . § 4-176[3] and § 22a-3a-4[4] of the Regulations of Connecticut State Agencies, the plaintiff requested that the [Commissioner of Energy and Environmental Protection (commissioner)] issue the following declaratory ruling: '[The department] erred in concluding that the bid submitted by [FuelCell] in the response to the [request] satisfied

---

[3] General Statutes § 4-176 (a) provides: "Any person may petition an agency, or an agency may on its own motion initiate a proceeding, for a declaratory ruling as to the validity of any regulation, or the applicability to specified circumstances of a provision of the general statutes, a regulation, or a final decision on a matter within the jurisdiction of the agency."

[4] Section 22a-3a-4 (a) of the Regulations of Connecticut State Agencies provides in relevant part: "(1) Any person may petition the Commissioner in writing to issue a declaratory ruling as provided by section 4-176 of the General Statutes. The petition shall identify clearly and with particularity the facts and circumstances which give rise to the petition; any statute, regulation, or final decision of the Department at issue and the particular aspect of it to which the petition is addressed; and the question or questions as to which the declaratory ruling is sought. . . ."

the site control requirements of the [request], and . . . [the department's] failure to remove it from the rankings was clearly erroneous and arbitrary and capricious.' . . . On April 1, 2021, [the commissioner] declined to issue a declaratory ruling." (Citations omitted; footnotes added.)

In the written decision declining to issue the requested declaratory ruling pursuant to § 4-176 (e),[5] the commissioner explained that the plaintiff failed to identify any statute, regulation or final decision of the department "to serve as the [basis] for a declaratory ruling. . . . [A] declaratory ruling must relate to 'the validity of a regulation or the applicability of the provision of the general statutes, the regulation, or the final decision in question to the specified circumstances . . . .' In reviewing and approving the selections of the [electric companies], [the department] is executing the program requirements embodied in a PURA final decision, not a statute, a [department] regulation, or a [department] final decision. Accordingly, the [department] finds that it lacks the authority to issue a declaratory ruling based on the specified circumstances laid out in the petition." (Footnote omitted.)

In response, the plaintiff initiated the underlying declaratory judgment action in the Superior Court pursuant to § 4-175 (a)[6] seeking "a declaratory judgment

---

[5] General Statutes § 4-176 (e) provides in relevant part: "Within sixty days after receipt of a petition for a declaratory ruling, an agency in writing shall . . . (5) decide not to issue a declaratory ruling, stating the reasons for its action."

[6] General Statutes § 4-175 (a) provides in relevant part: "If a provision of the general statutes, a regulation or a final decision, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff and if an agency . . . decides not to issue a declaratory ruling under subdivision . . . (5) of subsection (e) of . . . section 4-176 . . . the petitioner may seek in the Superior Court a declaratory judgment as to the validity of the regulation in question or the applicability of the provision of the general statutes, the regulation or the final decision in question to specified circumstances. . . ."

as to the applicability of the provision of [the department's] regulation (i.e., its [shared clean energy] program requirements, as described herein) as to the specified circumstances of the 2020 [request] . . . ."[7]

The department moved to dismiss the underlying action, claiming that the plaintiff could not seek a declaratory judgment pursuant to § 4-175 because no statute, final decision, or regulation interfered with the plaintiff's legal rights. It argued that its October 22, 2020 review of the bids was not a final decision under § 4-175 and that the program requirements are not regulations under the UAPA because § 16-244z specifically directed the department to develop "program requirements" rather than regulations and because those program requirements are not "generally applicable" under the statutory definition of the term "regulation." See General Statutes § 4-166 (16).

The court agreed with the department, concluding that the department's "mid-level review" of FuelCell's bid was not a final decision and because the program requirements are neither General Statutes nor regulations. The court reasoned that "the plain language of

---

[7] The present case is the second in a trilogy of cases initiated by the plaintiff in which it has sought to invalidate FuelCell's winning bid. See *Jefferson Solar, LLC* v. *FuelCell Energy, Inc.*, 213 Conn. App. 288, 288 A.3d 1032 (2022), cert. denied, 346 Conn. 917, 290 A.3d 799 (2023) (*Jefferson Solar I*); *Jefferson Solar, LLC* v. *FuelCell Energy, Inc.*, 224 Conn. App. 710,

     A.3d    (2024) (*Jefferson Solar III*). In *Jefferson Solar I*, the plaintiff brought an action against FuelCell asserting, inter alia, a claim for a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110 et seq., based on FuelCell's allegedly false bid certification. *Jefferson Solar, LLC* v. *FuelCell Energy, Inc.*, supra, 213 Conn. App. 291. The trial court dismissed the CUTPA claim for lack of standing, and this court affirmed that judgment on appeal. Id., 298. In *Jefferson Solar III*, the plaintiff initiated an action against FuelCell and United Illuminating asserting various counts against each defendant based on the award of the contract to FuelCell. *Jefferson Solar, LLC* v. *FuelCell Energy, Inc.*, supra, 224 Conn. App. 710. The trial court again dismissed the action for lack of standing, and we affirmed that judgment. See id.

§ 16-244z does not use the word 'regulation' when empowering [the department] to develop the program requirements. Throughout Title 16, the legislature has repeatedly used the word regulation when it intended to give an agency the power to adopt regulations pursuant to the UAPA. Moreover, if the court were to consider the . . . program requirements regulations, it would run contrary to [General Statutes § 16-35 (c)]. . . . [Section] 16-35 (c) bars appeals from PURA energy procurement processes because the legislature expressly stated that these proceedings 'shall be uncontested.' If the . . . program requirements were regulations, every time a decision was made pursuant to the program requirements, the decision could be appealed under [the] UAPA, however, the legislature did not intend for unsuccessful bidders to file administrative appeals from PURA [energy] procurement proceedings according to the plain language in § 16-35 (c). . . .

"Additionally, these program requirements were not promulgated pursuant to the UAPA formalities for enacting regulations. . . . The conclusion that the . . . program requirements are not regulations is further supported by the nature of the program that these requirements govern. The . . . program requirements are not generally applicable because this is a highly specialized clean energy program, and the requirements apply to a very limited [number] of potential bidders. . . . Section 16-244z is the procedure that the legislature laid out for PURA and [the department] to implement the program . . . . Thus, the . . . program requirements are not regulations." (Citations omitted.) Accordingly, the court granted the department's motion to dismiss, and this appeal followed.

On appeal, the plaintiff claims that the court improperly dismissed its declaratory judgment action under § 4-175 because the program requirements are regulations under the UAPA. Before addressing the parties'

arguments, we set forth the applicable standard of review and relevant legal principles that guide our analysis.

"Administrative agencies are tribunals of limited jurisdiction and their jurisdiction is dependent entirely [on] the validity of statutes vesting them with power and they cannot confer jurisdiction [on] themselves. . . . [A]n administrative body must act strictly within its statutory authority, within constitutional limitations and in a lawful manner. . . . It cannot modify, abridge or otherwise change the statutory provisions, under which it acquires authority unless the statutes expressly grant it that power. . . .

"[T]he question of subject matter jurisdiction is a question of law . . . and, once raised, either by a party or by the court itself, the question must be answered before the court may decide the case. . . . [B]ecause [a] determination regarding . . . subject matter jurisdiction is a question of law, our review is plenary." (Citation omitted; internal quotation marks omitted.) *Kleen Energy Systems, LLC* v. *Commissioner of Energy & Environmental Protection*, 319 Conn. 367, 380–81, 125 A.3d 905 (2015).

"There is no absolute right of appeal to the courts from a decision of an administrative agency. . . . Appeals to the courts from administrative [agencies] exist only under statutory authority . . . . Appellate jurisdiction is derived from the . . . statutory provisions by which it is created, and can be acquired and exercised only in the manner prescribed. . . . In the absence of statutory authority, therefore, there is no right of appeal from [an agency's] decision . . . ." (Internal quotation marks omitted.) *Trinity Christian School* v. *Commission on Human Rights & Opportunities*, 329 Conn. 684, 692–93, 189 A.3d 79 (2018). In the

present case, the relevant statutory authority is §§ 4-175 and 4-176.

Pursuant to § 4-176 (a), "[a]ny person may petition an agency . . . for a declaratory ruling as to the validity of any regulation, or the applicability to specified circumstances of a provision of the general statutes, a regulation, or a final decision on a matter within the jurisdiction of the agency." When the agency declines to issue a declaratory ruling pursuant to § 4-176 (e) (5), "the petitioner may seek in the Superior Court a declaratory judgment as to the validity of the regulation in question or the applicability of the provision of the general statutes, the regulation or the final decision in question to specified circumstances." General Statutes § 4-175 (a). Thus, "a complaint brought pursuant to § 4-175 must set forth facts to support an inference that a provision of the general statutes, a regulation or a final decision, or its threatened application, interferes with or impairs, or threatens to interfere with or impair the legal rights or privileges of the plaintiff." (Internal quotation marks omitted.) *Emerick* v. *Commissioner of Public Health*, 147 Conn. App. 292, 296–97, 81 A.3d 1217 (2013), cert. denied, 311 Conn. 936, 88 A.3d 551 (2014).

Whether the plaintiff has a statutory right to seek a declaratory judgment under § 4-175 (a) "is a question of statutory interpretation over which our review is plenary. . . . Relevant legislation and precedent guide the process of statutory interpretation. General Statutes § 1-2z provides that, '[t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered.' " (Citation omitted.) *Middlebury* v.

*Dept. of Environmental Protection*, 283 Conn. 156, 166, 927 A.2d 793 (2007).

On appeal, the plaintiff notes that the dispositive issue in the present case is "whether [the department's] program requirements under the [shared clean energy facility] program are a 'regulation' (i.e., a statement of general applicability that implements, interprets, or prescribes law or policy), such that a declaratory ruling can be requested under [§] 4-176."[8] It argues that the program requirements are regulations under the UAPA because they "are a statement of general applicability implementing law or policy that apply to an entire industry—energy generators that wish to compete under the [shared clean energy facility] program—and thus constitute an agency statement of general applicability, and thus a regulation, under § 4-166 (16)."[9] For its part, the department contends that "the program requirements are not regulations" and that this court "should not endorse the use of § 4-175 as an end run around § 16-35." In its reply brief, the plaintiff argues that "the contested case/final decision [issue under § 16-35 (c) is] irrelevant here. What [§] 16-35 (c) does is remove a PURA energy procurement from the status as a contested case before PURA. But a contested case never included 'a petition for a declaratory ruling under [§] 4-176.' Controlling case law makes it clear that proceedings on a petition

___

[8] The parties agree that the program requirements do not constitute provisions of the General Statutes and that the department's "mid-level" determination that FuelCell's proposal complied with the program requirements was not a final decision under § 4-175 (a).

[9] General Statutes § 4-166 provides in relevant part: "As used in this chapter . . . (16) 'Regulation' means each agency statement of general applicability, without regard to its designation, that implements, interprets, or prescribes law or policy, or describes the organization, procedure, or practice requirements of any agency. The term includes the amendment or repeal of a prior regulation, but does not include (A) statements concerning only the internal management of any agency and not affecting private rights or procedures available to the public, (B) declaratory rulings issued pursuant to section 4-176, or (C) intra-agency or interagency memoranda . . . ."

for a declaratory ruling under [§] 4-176 are, and have always been, appealable under the UAPA." We agree with the department, as the plaintiff's claim that the program requirements constitute regulations for purposes of § 4-175 is contrary to the clearly expressed intent of the legislature in both §§ 16-35 (c) and 16-244z (a) (1) (C).

We begin with the relevant statutory language. First, § 16-244z (a) (1) (C) provides in relevant part that the department "shall . . . initiate a proceeding to develop program requirements and tariff proposals for shared clean energy facilities eligible pursuant to subparagraph (C) of subdivision (2) of this subsection . . . . On or before July 1, 2019, the department shall submit any such program requirements and tariff proposals to [PURA] for review and approval. On or before January 1, 2020, [PURA] shall approve or modify such program requirements and tariff proposals submitted by the department. . . ." It is significant that the legislature did not direct either the department or PURA to establish "regulations," as it has done expressly in other sections of the same chapter. See, e.g., General Statutes § 16-32a (if "competitive bidding seems likely to reduce procurement costs without impairing quality, continuity or dependability of service or the ability to respond to emergencies, [PURA] may, after notice and public hearing, establish such regulations as it deems necessary to provide for competitive bidding in appropriate cases"); General Statutes § 16-244c (g) ("[PURA] shall establish, *by regulations adopted pursuant to* [*the UAPA*], procedures for when and how a customer is notified that his electric supplier has defaulted and of the need for the customer to choose a new electric supplier within a reasonable period of time or to return to standard service" (emphasis added)). It is a basic rule of statutory interpretation that, when "a statute,

with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed." (Internal quotation marks omitted.) *In re Cole*, 347 Conn. 284, 297, 297 A.3d 151 (2023). Thus, the fact that the legislature has directed PURA to act by regulation in a related statute but declined to direct either PURA or the department to do so in § 16-244z in developing the program requirements, demonstrates that the legislature did not intend for the program requirements to be regulations subject to the rule-making process under the UAPA. That conclusion is further supported by the overall legislative scheme governing PURA energy procurement proceedings, of which the shared clean energy facility program is a part.

Specifically, the legislature directed the department to develop the program requirements for PURA's approval, which implicates § 16-35 (c). Section 16-35 (c) expressly provides that, "[n]otwithstanding any provision of this title and title 16a, proceedings in which [PURA] conducts a request for proposals or any other procurement process for the purpose of acquiring electricity products or services for the benefit of ratepayers shall be uncontested." By designating proceedings that involve an energy procurement process as "uncontested," the legislature elected not to provide a right to judicial review in such proceedings because "[a] party seeking review of a state agency's action . . . must establish that the injury resulted from a final decision in a *contested case*." (Emphasis added.) *Ardmare Construction Co.* v. *Freedman*, 191 Conn. 497, 503, 467 A.2d 674 (1983). Again, it is significant that "the legislature has, elsewhere in our statutory scheme, expressly provided for judicial review of agency decisions by calling the decision a 'contested case' or by referring to § 4-183." (Footnote omitted.) *Ferguson Mechanical Co.* v.

*Dept. of Public Works*, 282 Conn. 764, 776–77, 924 A.2d 846 (2007); see also id., 777 nn.12 and 13 (noting statutes that grant right of judicial review by reference to § 4-183 as well as statutes denying basis for appeal under UAPA).

It is axiomatic that "the legislature, rather than the agencies, has the primary and continuing role in deciding which class of proceedings should enjoy the full panoply of procedural protections afforded by the [act] to contested cases, including the right to appellate review by the judiciary. Deciding which class of cases qualif[ies] for contested case status reflects an important matter of public policy and the primary responsibility for formulating public policy must remain with the legislature." (Internal quotation marks omitted.) *Middlebury* v. *Dept. of Environmental Protection*, supra, 283 Conn. 170. Thus, given that the legislature has stated expressly its intent that there be no right to judicial review in PURA initiated procurement proceedings broadly and that it directed the department to develop "program requirements"—not regulations—to be approved by PURA, we cannot agree with the plaintiff that the program requirements constitute regulations that are subject to a declaratory judgment action under § 4-175. To conclude that they are regulations would render meaningless the express language of both §§ 16-35 (c) and 16-244z (a) (1) (C) exempting the procurement process from judicial review. As our Supreme Court has observed, "the absence of judicial review is consistent with the purpose of the public bidding statutes, which is promot[ing] the public interest in the efficient completion of public works projects." (Internal quotation marks omitted.) *Ferguson Mechanical Co.* v. *Dept. of Public Works*, supra, 282 Conn. 778.

In light of that statutory scheme, the plaintiff's reliance on *Walker* v. *Commissioner, Dept. of Income Maintenance*, 187 Conn. 458, 446 A.2d 822 (1982), is

misplaced. In *Walker*, the plaintiff, a recipient of public assistance benefits under a program administered by the defendant agency, sought payment for expenses she had incurred when she moved her residence. Id., 459. The defendant denied the request because "the plaintiff had failed to obtain approval of the expenses prior to moving." Id. Although the regulation under which the plaintiff sought payment did not require prior approval, it was the defendant's policy "not generally available to the public . . . [that] expressly include[d] moving expenses among those special items requiring prior approval . . . ." Id., 460. In determining whether the unstated policy had "a sufficiently substantial effect upon the rights of a party as to constitute a regulation" under the UAPA; id.; our Supreme Court explained that "[i]t is not conclusive that an agency has, or has not, denominated its action a regulation or that it has, or has not, promulgated it procedurally in the fashion that would be required of a regulation. . . . The test is, rather, whether a rule has a substantial impact on the rights and obligations of parties who may appear before the agency in the future." (Citations omitted; internal quotation marks omitted.) Id., 462.

Applying that test, the court reasoned that "[t]he prior approval policy is a statement of general applicability because it applies to all [assistance] recipients seeking help with their moving expenses. . . . The policy also affects the substantial rights of potential recipients in ways in which purely procedural requirements, such as requiring particular information on specific forms, do not. The policy has the effect of denying the payment of moving expenses to anyone who would otherwise qualify . . . . [The prior approval] policy, therefore, concerns more than the [defendant's] internal management; it affects the substantial rights of the potential recipients. Because the prior approval policy is a statement of general applicability . . . that implements,

interprets, or prescribes law or policy and is not a statement concerning only the internal management of the defendant which does not affect private rights, it is a regulation under the UAPA." (Citation omitted; footnote omitted; internal quotation marks omitted.) Id., 463–64.

In the present case, the plaintiff argues that, "[a]s in *Walker*, here [the department's] rules concern more than the department's internal management; [they] affect the substantial rights of the potential [bidders]." According to the plaintiff, "just like a typical regulation, the agency (here, [the department]) administers it and is in charge of implementing it and applying it to specified circumstances. . . . The decision of whether a bidder satisfies [the department's site control rules] resides with [the department]. PURA does not second-guess [the department]. . . . Here, [the department's] rules apply to an entire industry . . . and regulate billions of dollars worth of contracts. Here, as in the normal situation with rules, the [department's] site control rules provide the law that determines who is entitled to the public benefit of the contracts." (Citations omitted.)

The critical distinction between the present case and *Walker*, however, is that here, the department acted in accordance with an express legislative directive to develop "program requirements" to be adopted by PURA, whereas, in *Walker*, the agency developed its policy for administering its own regulation without an express legislative directive to act in a particular manner. Accordingly, the present case does not involve an agency's characterization of its own action, but, rather, it involves the legislature's express directive to the department to develop "program requirements"—not regulations. Moreover, those program requirements were adopted by PURA in an uncontested proceeding, as defined by § 16-35 (c). Consequently, *Walker*'s analysis is not controlling in the present case.

For the same reason, the out-of-state cases on which the plaintiff relies also are unpersuasive. Specifically, the plaintiff cites two cases, *Academy Bus Tours, Inc.* v. *New Jersey Transit Corp.*, 263 N.J. Super 353, 622 A.2d 1335 (N.J. App. Div.) (*Academy*), cert. denied, 134 N.J. 485, 634 A.2d 531 (1993), and *Sa-Ag, Inc.* v. *Minnesota Dept. of Transportation*, 447 N.W.2d 1 (Minn. App. 1989) (*Sa-Ag*), in support of its contention that other state courts have found that bidding requirements constitute rules or regulations under the UAPA. Neither of those cases, however, involved a statutory scheme comparable to that at issue in the present case.

First, in *Academy*, the New Jersey Appellate Division held that the policy of the defendant, New Jersey Transit Corporation (NJ Transit), establishing criteria for contracting out for its bus routes was a rule under the New Jersey Administrative Procedure Act, because the policy was "an agency statement of general applicability and continuing effect that implements or interprets law or policy." (Internal quotation marks omitted.) *Academy Bus Tours, Inc.* v. *New Jersey Transit Corp.*, supra, 263 N.J. Super. 361. In that case, the relevant statutes simply provided that, "[i]n the provision of public transportation services, it is desirable to encourage to the maximum extent feasible the participation of private enterprise and to avoid destructive competition. . . . [NJ Transit] may enter into contracts with any public or private entity to operate motorbus regular route, paratransit or motorbus charter services or portions or functions thereof. Payments shall be by agreement upon such terms and conditions as the corporation shall deem necessary." (Citation omitted; internal quotation marks omitted.) Id., 356. Under those statutes, NJ Transit "adopted a contracting-out policy evidencing its intention to contract out approximately five percent of its existing service and to contract out new and

restructured service. It interpreted the legislative mandate to mean that private carriers should be used when they can maintain quality service; improve the financial position of the state significantly on the route or routes in question; ensure continued responsiveness; and operate in a coordinated system and safely." Id. The court reasoned that the agency "adopted a policy which is intended to be applied generally and uniformly to the prospective ability of outside carriers to bid on bus routes. It prescribes a standard, not expressly provided in the statute, for the participation of outside carriers in the operation of [its] bus routes." Id., 362.

Similarly, in *Sa-Ag*, "the Minnesota Department of Transportation issued a statement . . . (the addendum), to all bidders on state contracts. The addendum purported to explain which haulers of sand, gravel or stone to state highway construction projects would have to adhere to prevailing wage and hourly rates. Claiming that this addendum was an interpretation of [a Minnesota statute], [the] respondents asserted the addendum constituted a rule, the adoption of which is subject to the rulemaking procedures set forth in the Minnesota Administrative Procedure Act (MAPA) . . . . Determining that the addendum was a statement of general applicability and future effect, the trial court concluded the addendum was a rule and enjoined the state from enforcing its provisions unless and until it is adopted as a rule after notice and a hearing pursuant to MAPA." (Citation omitted.) *Sa-Ag*, *Inc.* v. *Minnesota Dept. of Transportation*, supra, 447 N.W.2d 1–2. On appeal, the Court of Appeals of Minnesota explained that "[t]here is no dispute the addendum is in fact a statement of an agency of general applicability and future effect. . . . The parties agree that, if anything, the addendum would be an interpretive rule, which is one promulgated to make specific the law enforced or

administered by the agency." (Citations omitted; internal quotation marks omitted.) Id., 4. After considering the text of the relevant statute, the court concluded that it was "certainly subject to more than one interpretation and the Department of Transportation thus engaged in rulemaking by issuing the addendum which interprets [that statute]. Consequently, the trial court properly enjoined enforcement of the terms of the addendum unless and until the appropriate state agency adopts a rule pursuant to [MAPA]." Id., 5.

Again, just as with *Walker* v. *Commissioner, Dept. of Income Maintenance*, supra, 187 Conn. 458, the critical distinction between both *Academy* and *Sa-Ag* and the present case is that, unlike the clearly expressed legislative directives to the department and PURA in § 16-244z for the department to develop "program requirements" for PURA's approval for the shared clean energy facility procurement process, the agencies in *Academy* and *Sa-Ag* adopted policies interpreting statutes in the absence of a clear legislative directive to act in a particular manner. In addition, neither of those cases involved a statute designating the attendant procurement processes as uncontested proceedings under the respective administrative procedure acts, as § 16-35 (c) does in the present case. Thus, both cases are distinguishable from the present case.[10]

---

[10] We note that at least one court has held that an agency's bidding requirements are not regulations. In *Medical Management & Rehabilitation Services, Inc.* v. *Maryland Dept. of Health & Mental Hygiene*, 225 Md. App. 352, 355, 124 A.3d 1137 (2015), the plaintiffs challenged the defendant state agency's award of a contract to a competitor, and the trial court dismissed the action for failure to exhaust administrative remedies. On appeal, the plaintiffs claimed, among other things, that they were entitled to petition for a declaratory judgment challenging the contract award because the request for proposals was "effectively a regulation that was not adopted in accordance with [the Maryland Administrative Procedure Act]." Id., 364. The Court of Special Appeals of Maryland rejected that claim, holding that the agency's request for proposals "and the related contract award do not constitute a regulation under Maryland law." Id., 369. The court reasoned that the request for proposals did not constitute "a substantially new generally

In sum, mindful of the legislature's role, we reject the plaintiff's proffered interpretation of the program requirements in the present case, which plainly contradicts the legislature's clearly expressed policy decision. Cf. *Kleen Energy Systems, LLC* v. *Commissioner of Energy & Environmental Protection*, supra, 319 Conn. 388 (rejecting any interpretation of § 4-176 that suggests "that the department has broad authority to issue declaratory rulings pursuant to § 4-176 whenever it is asked to interpret a contract that it was involved in drafting, even if the contract was not approved in a contested case and the dispute did not require the department to apply a statute to the specific circumstances of the contractual dispute"). Therefore, because the program requirements are not regulations under the UAPA, the court properly dismissed the plaintiff's action seeking a declaratory judgment under § 4-175, as the plaintiff's requested ruling did not ask the court to decide whether a regulation is valid or to determine the application of a regulation, statute, or final decision. See *Pinchbeck* v. *Dept. of Public Health*, 65 Conn. App. 201, 206, 782 A.2d 242 (holding that § 4-175 did not authorize plaintiff to bring declaratory judgment action because "[s]he did not ask the [trial] court to decide whether a regulation is valid or whether a regulation, statute or decision applied to the facts of [her] case"), cert. denied, 258 Conn. 928, 783 A.2d 1029 (2001).

The judgment is affirmed.

In this opinion the other judges concurred.

---

applicable policy" because it was "limited to case management services for a finite segment of the greater Medicaid population for a single contract period of July 1, 2013 through June 30, 2016, and applies only to the case management agencies responding to the [request for proposals]." (Internal quotation marks omitted.) Id., 368.